TERM. 1856.]                          Grissom vs. Hill.

## GRISSOM VS. HILL.

It is not against public policy, nor the spirit of our laws, to donate, in perpetuity, a lot of ground for charitable purposes—as for the use of a religious denomination as a place of worship: and deeds for such purposes should be liberally construed, in order to uphold the trust.

The trustees under such a deed, which provides that the "lot of land is never to be sold, or to be used in any other way, only for the use of a church," cannot create a charge upon the lot by a contract for the erection of a house thereon; so as to authorize the mechanic to obtain a lien and sell the lot in payment thereof—they cannot do indirectly that which they are prohibited from doing directly.

And if the trustees permit such a lien to be created upon the lot, and suffer it to be sold, thereby defeating the object of the grant, the grantor, though there be no clause of forfeiture in the deed, may apply to a court of equity to set aside the sale, and divest the title and possession of the purchaser.

*Appeal from Ouachita Circuit Court in Chancery.*

Hon. SHELTON WATSON, Circuit Judge.

CURRAN & GALLAGHER and CASE, for appellant.

PIKE & CUMMINS, contra.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

In August, 1852, Ezra Hill filed a bill on the chancery side of the Ouachita Circuit Court, against Arthur W. Simmons and others, alleging, in substance, that on the 8th of November, 1848, the complainant being seized in fee of a certain lot of ground, situated in the city of Camden, he, and his wife, by deed of that date, conveyed the same to Arthur W. Simmons, Berry Beard, Thomas W. Bruce, Levi Reece and John L. Wells, as trustees, for the use and benefit of the Methodist Protestant Church, and their suc-

cessors in office, for life. That the object of complainant, in making said conveyance, was purely charitable, and to promote religion and morality, and that he never received or demanded any other consideration therefor, than the implied and expressed stipulation of the grantees to carry out the object of the said grant: and to the end that such should be the case, the conveyance was made upon the express condition, as set forth in the deed, *that said lot of land was never to be sold, or to be used in any other way, only for the use of a church, for the benefit of said Protestant Church.* Which deed, with said condition plainly written therein, was, on the day of its execution, filed for registration in the office of the recorder of said county, and duly recorded.

That shortly after the said donation was so made, said trustees caused a large framed house to be erected upon the lot, to be used, as complainant supposed, as a place of public worship, for the Protestant Methodist Church, in Camden, but, to the surprise of complainant, and contrary to the object, spirit and intent of said donation, and without the assent of the complainant, a school was taught in said house during the most of the year 1849, *to the great annoyance of complainant, and the immediate* neighborhood.

That said building had been, for nearly three years, wholly deserted as a house of public worship.

That on the 12th of March, 1850, James S. Grissom, filed in the office of the clerk of the Circuit Court of said county, his account, sworn to, for the sum of $283 63, for the purpose of availing himself of the statutes, on the subject of mechanics' liens, it appearing from said account that he, and his servants, apprentices and journeymen had built said house at the employment of the trustees. On the 3d September, 1850, a *scire facias* was issued thereon against the trustees, requiring them to show cause why Grissom should not have judgment for the amount of his lien, and execution thereon against the house and lot charged, which writ was returned by the sheriff, duly executed. That, at at the October term, 1850, of said Circuit Court, judgment was

taken by Grissom upon default of the trustees, and a writ of enquiry ordered, which was executed at the April term, 1851, and the jury assessed the damages of Grissom at $283 63, for which final judgment was rendered, and that he have his lien upon the house and lot, &c.

That, on the 21st July, 1851, an execution was issued upon the judgment, levied upon the property, which was duly advertised, sold by the sheriff at the court house door, on the first day of the return term, (29th September, 1851,) and purchased by Grissom, at $250, who obtained the sheriff's deed therefor, which was duly acknowledged and recorded.

The deed from Hill and wife to the trustees, and a transcript of the proceedings of Grissom to enforce his mechanics' lien, including the sheriff's deed to him, are made exhibits to the bill.

The complainant further charges, that the abandonment of the house, as a place of public worship, for the Methodist Protestant Church, the converting of the same into a school house, and the permitting of it to be sold, under the supposed lien of Grissom, which, complainant alleges, was through the negligence, inattention and fraud of the trustees, were all gross and flagrant violations of the conditions and terms of the grant. That Grissom, before building the house, had full notice of the conditions upon which the title vested in the trustees; and charged his lien upon the property with his eyes open, knowing at the time, that the very proceedings which he had adopted, would divest the title of the trustees.

That Grissom now (the time of filing the bill,) holds possession of the house, has locked it up, and refuses to permit the trustees, or complainant, to enter the same, which is in fraud and violation of the rights of complainant.

That by said action on the part of the trustees and Grissom, the interest and title of the trustees have been, and are forfeited, and the same ought, in equity and good conscience, to be wholly divested out of them, and re-vested in complainant.

The trustees and Grissom are made parties, and the bill prays

that the title of the trustees be declared forfeited and re-vested in complainant; and that the title acquired by Grissom, be set aside and declared void, &c.

The deed from Hill and wife to the trustees, is, in substance, as follows:

"This deed of conveyance, made and entered into, this 8th day of November, A. D. 1848, by, and from Ezra Hill and wife, &c., of &c., of the first part, and Arthur W. Simmons, &c., &c., trustees, for the use and benefit of the Methodist Protestant Church, and their successors in office, for life, of the second part, *witnesseth*, that the said parties of the first part, for, and in consideration of one dollar, &c., have granted, bargained and sold, aliened and conveyed, and hereby grant, bargain and sell, alien and convey, unto the parties of the second part, the following described lot of land, namely: (*here the lot is described.*) To have and to hold the above granted parcel of land and premises, unto the said parties of the second part, their heirs and assigns forever. And the said parties of the first part, and their heirs, shall, and will warrant and forever defend the same unto the said parties of second part, and to their heirs and assigns forever, against the lawful claims of all persons, &c. *But said lot of land is never to be sold, or to be used in any other way, only for the use of a church, for the benefit of the said Protestant Church.*"

Then follows a clause relinquishing the dower of the wife; and the usual formal conclusion, with the signatures and seals of the grantors.

The defendant, Berry Beard, filed a disclaimer, and the bill was dismissed as to him; the other defendants interposed a demurrer to the bill for want of equity; the demurrer was overruled by the Chancellor; the defendants rested, and final decree was rendered for the complainants in accordance with the prayer of the bill; from which Grissom appealed to this court.

The trustees having acquiesced in the decree of the court be-

low, all controversy as to their rights, as between them and Hill, must be regarded as at an end, and the questions to be determined upon this appeal, arise between Grissom and Hill.

The lot was granted by Hill to to the grantees, and their successors, in trust, for the use and benefit of a Christian denomination, upon two conditions: 1st. That said lot was never to be sold: and, 2d. That it was never to be used in any other way, than for the use of a Church, for the benefit of said denomination.

1. It is insisted by the counsel of the appellant, that the lot having been granted to the trustees, for the purpose of erecting thereon a house of worship, the power to encumber it with the cost of such erection, and subject it to the lien of the mechanic, and sale to discharge such incumbrance, necessarily followed as incidents of the trust.

2. That the provision in the deed, that the lot *was never to be sold*, must be construed to apply to voluntary alienations by the trustees, and not to alienations by act of law.

3. That, in the absence of an express clause of forfeiture in the deed, the lot could never revert to the grantor, on account of the violation of the terms and conditions of the trust. The second proposition will be considered first.

Settlements to the use of individuals, with restrictions upon alienation, are not favored by the law, and deeds or wills making such restrictions, are strictly construed. Hence, it is held, in the English cases, cited by the counsel for the appellant, (1 *Sim.* 66; 2 *Ib.* 479; 1 *Russ. & Mill.* 69; 6 *Term Rep.* 684,) that where an annuity is settled upon an individual, with a provision against voluntary alienation, or incumbrances by him, upon his becoming a bankrupt, the annuity passes to his assignee, unless there is a provision in the will or deed that it shall determine upon his bankruptcy, &c. The same doctrine has been recognized in *Hallett vs. Thompson*, 5 *Paige* 583, where it was held, that where a legacy would pass to the assignees of the legatee, under the insolvent act, &c., it might be reached by a judgment

creditor by bill in equity, and applied to the satisfaction of his debt. The Chancellor in that case, remarked, that: "As a general rule, it is contrary to sound public policy, to permit a person to have the absolute and uncontrolled ownership of property for his own purposes, and to be able, at the same time, to keep it from his honest creditors."

A summary of the English cases, on this subject, may be found in *Hill on Trustees*, *p. 395*.

But, surely, in a Christian country like ours, it is not against public policy, or the spirit of our laws, for a man to donate to trustees, a lot of ground, to be held and appropriated by them and their successors, in perpetuity, for the use and benefit of a religious denomination as a place of worship. Such conveyances are favored and upheld by *chap*. 135, *Digest*, *p*. 840.

Deeds and wills creating trusts for charitable purposes, such as the one in question, are to be liberally construed, in order to uphold the trust, and carry out the intention of the donor. *Hill on Trustees*, 450, *et seq*.

The object of Hill, in making the deed in question, as is manifest from its provisions, was to donate and secure to the perpetual use of the Protestant Methodist denomination in Camden, a lot of ground, upon which to erect and maintain a house of worship, and hence he provided that the lot should never be sold, or appropriated to any other purpose.

If the trustees could, by improvident contracts, involve the property in debt, and thereby subject it to be sold under execution, the intention of the donor might be defeated in that way, as well as by a voluntary sale on their part, because the purchaser could appropriate the lot and church, in either case, to his own private purposes, and prevent the use of it, for religious purposes, as it seems was done in this case. The trustees would hardly be allowed to do, indirectly, that which they have no power to do directly.

Even where a deed does not prohibit the sale of the trust estate, if the sale of it would defeat or prejudice the object of the charity,

the trustees have no power to sell it. "It is plain," says Mr. HILL, "that, in ordinary cases, a most important part of the duty of the trustees is to preserve the trust property, and it lies with those who seek to support a sale by them, to show that the transaction in question was beneficial for the charity. In the absence of such proof, and *a fortiori*, if there be any evidence showing that the sale was improvident, or prejudicial to the charity, it will be treated as a breach of trust, and set aside." *Hill on Trustees*, 463.

The nature of the donation in this case, is such, that a sale of the property would necessarily defeat the object of the charity.

"The trustees of a charity will not be justified in placing the funds under the control of other persons, who were not contemplated by the creator of the trust." *Hill on Trustees*, 466.

If the appellant has obtained a valid title to the lot in question, he might appropriate it, and the house upon it, to secular purposes, foreign to the objects of charity contemplated by the donor.

It is not, however, to be understood, that the deed secures the lot from any and all transfers by act of law. Unless exempted by law, it would, like other property, be subject to sale for public taxes and charges: provisions for the support of government being paramount.

1. Having thus disposed of the second point made for the appellant, there is no difficulty in determining the first.

The conditions contained in the deed from Hill to the trustees, are to be regarded as prior incumbrances upon the property; and the deed being recorded, the appellant, in making his contract with the trustees to build upon the lot, was bound to take notice of, and contract in reference to the provisions of the deed. *Digest*, chap. 105, secs. 20, 27.

In *Brown vs. Morrison et al.*, 5 *Ark. Rep.* 221, Mr. Justice LACY, delivering the opinion of the court, said: "The Legislature possesses no power to divest legal or equitable rights previously vested. The legal or equitable estate may be charged

32c

with the lien, provided that does not interfere with other paramount interests or duties. The vested rights of third persons, who are neither parties nor privies to the contract between the tenant in possession and mechanics, cannot be prejudiced or sported away by their agreement. To allow this, would be to expose the whole estate to utter ruin, or onerous burdens, that would materially impair its value. The law makes it the duty of all persons, who contract, to ascertain the nature and extent of the interest they acquire. This rule imposes no greater hardship or inconvenience on mechanics than on other individuals. He who has the fee, or is tenant in possession, can be compelled to exhibit his title to the premises on which he wishes to build, and even should he refuse, the records of the courts, which are always open for inspection and examination, will readily show it and all prior incumbrances, with which the estate stands charged."

In this case, the appellant, having proceeded with a full knowledge of the provisions of the deed, and the condition of the lot, can consider it no hardship to be required to look to the persons who employed him to erect the church upon the lot, for his pay.

3. If the estate vested in the trustees by the deed, be regarded strictly as an estate upon conditions, "it is usual," says Mr. KENT, (4 *Com.* 123,) " in the grant, to reserve, in express terms, to the grantor and his heirs, a right of entry for the breach of the conditions; but the grantor or his heirs may enter, and take advantage of the breach by ejectment, though there be no clause of entry."

A vested devise of lands to a town, for a school house, provided it be built within one hundred rods of the place where the meeting house stands, was held to be valid as a condition subsequent; and the vested estate would be forfeited, and go over to the residuary devisee as a contingent interest, on non-compliance in a reasonable time with the condition. *Hayden vs. Stoughton,* 5 *Pick. Rep.* 528.

So, if land be given, on condition that the public buildings of the parish be erected thereon, it has been held to revert to the donor if the seat of justice of the parish be removed, under the sanction of an act of the Legislature passed subsequent to the grant. *Police Jury vs. Reeves,* 18 *Martin's Lou. Rep.* 221.

These cases are cited by Mr. KENT, (4 *Com.* 125, 126,) as examples of the forfeiture of estates upon conditions, for failure to observe the conditions of the grant.

So it was held in *Lessee of Sperry vs. Pond,* 5 *Ohio Rep.* 241, that a conveyance, on condition that the grantee shall keep a saw-mill and grist-mill doing business on the premises, is a valid one, and if the grantee fails to perform the condition, he forfeits the estate.

But whether this is technically an estate upon conditions, such as, upon failure to observe the conditions on the part of the trustees, the lot will absolutely revert to the donor, and thereby cut-off, on account of the acts of the trustees, the beneficial interest of the *cestui que trusts*—the denomination for whose use the trust was created—it is not necessary to decide, as no one is representing, or claiming any thing for them on this appeal, unless it be Hill.

It appears from the allegations of the bill, that the trustees not only permitted the property to be sold, but that Grissom, the purchaser, locked up the house of worship erected upon the lot, and refused to permit it to be entered. In other words, that it had been converted into private property: and thus both conditions of the deed were violated.

That Hill, who made the grant for the use of the church, and who was entitled to have the property appropriated to the charitable purposes of the grant, had the right to apply to equity to set aside the sale to Grissom, and divest his title and possession, there can be but little question. *Hill on Trustees,* 521, 522. On this appeal, no other question is properly presented, and inasmuch as the appellant has no cause of complaint, the decree must be affirmed.

Absent, Mr. Justice HANLY.