## MICHAEL v. ST. PAUL MERCURY INDEMNITY CO.
### Civ. No. 913.

United States District Court
W. D. Arkansas, Fort Smith
Division.

Aug. 11, 1950.

Gutensohn & Ragon, Fort Smith, Ark., for plaintiff.

Hardin, Barton & Shaw, Fort Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

Plaintiff alleges that he was injured as the result of certain negligent conduct on the part of employees of St. Edwards Hospital; that St. Edwards "is a non-profit association not subject to an action for tort under the laws of the State of Arkansas"; that the defendant has issued a policy of liability insurance to St. Edwards, and by virtue of Ark.Stats.1947, Sec. 66-517, he has a direct cause of action against said defendant insurance company.

Defendant has filed a motion to dismiss alleging that St. Edwards is directly responsible for the torts of its employees and, therefore, Sec. 66-517 is inapplicable with the result that suit must be against St. Edwards rather than it; that said Sec. 66-517, wherein it attempts to authorize a suit directly against an insurance carrier, is unconstitutional as violative of the Due Process Clause and the Equal Protection Clause of the 14th Amendment to the Constitution of the United States as well as Art. 1, Sec. 10, the contract clause; and that said section is violative of the Due Process and Equal Protection Clauses of the Constitution of 1874 of the State of Arkansas, Art. 2, §§ 3, 8.

In considering the motion the court must treat all proper and material allegations as true and should not dismiss "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." Dennis et al. v. Village of Tonka Bay et al., 8 Cir., 151 F.2d 411, 412.

Sec. 66-517 provides that an injured person shall have a direct cause of action against the liability insurance carrier of "any co-operative non-profit corporation, association or organization or * * * any other organization or association of any kind or character, not subject to suit for tort."

Plaintiff has alleged that St. Edwards Hospital is a charitable non-profit organization, and this allegation will be accepted as true for purposes of this motion. Thus, it follows that if, under the law of Arkansas, a charitable non-profit organization is not subject to suit for tort, plaintiff may proceed directly against the defendant under Sec. 66-517. The constitutional questions will be reached only if Sec. 66-517 is found applicable to the case.

The leading case in Arkansas is Fordyce v. Woman's Christian National Library Association, 79 Ark. 550, 96 S.W. 155, 7 L.R.A.,N.S., 485, wherein the court held that the property of a charity cannot be sold under execution issued on a judgment rendered for the tort of its agents or trustees. The case was treated as one of a charitable trust, and the public library association involved therein qualified as such. Recognizing the divergent views on the subject, the court in the Fordyce case, supra, took the unqualified position that in this state the property of a charity cannot be sold under execution, and in the course of the opinion, 79 Ark. page 561, 96 S.W. page 159, said:

"The immunity of the property of a charity from sale under execution rests on special grounds. The property of a corporation organized solely for charitable purposes is exclusively dedicated to public uses. * * * If the doctrine of respondeat superior is applied to them (trustees) it follows that along with their other powers, they possess an implied power to destroy, by a willful violation of their duties, by collusion, or by negligence, the public interests that they are selected to preserve. Any conclusion that tends to support that view must leave out of consideration the public; that is to say, the party most deeply interested. To say that the trustees may by their negligence destroy the charity is simply to say that they may do indirectly and by inadvertence what they cannot do directly. The doctrine that the principle of respondeat superior has no application to this class of cases when the trustees willfully abuse their authority, and that it does apply in a single species of negligence, would seem to be merely the result of another effort to find a compromise. Nor do we think that an illogical compromise of that sort would tend to the public advantage. A judge or a jury might be convinced, after a case of negligence had occurred, that due judgment and discretion had not been used in the selection of experts and other agents, when perhaps they themselves, if put to it, in a similar case, would do no better, and might do worse; and it seems to us that if our schools, churches, hospitals, and other charities could be sold out on such vague matters of opinion, about which men would naturally differ, the result would be extremely unfortunate."

Thus, at the time of this decision, the Arkansas Supreme Court was committed to the doctrine that neither a stranger to nor a person receiving benefits under a charitable trust could reach the trust property whether or not the trustee was personally at fault. It is true that the court did not hold that the charitable association could not be sued in the first instance. The facts of the case did not require a decision of that question. The trustees were then and are now personally answerable for their own torts, as are their employees. But, a charitable corporation, as St. Edwards is alleged and here assumed to be, is operated on a non-profit basis and all of its funds are committed to the operation and furtherance of its charitable purpose. There is no fund set aside or available for the payment of tort damages. If it were otherwise the

corporation could not qualify as charitable. According to the complaint, this insurance policy was issued to indemnify the hospital, not its officers or the Board of Directors or the employees. And, to say that although the trust fund of the corporation cannot be reached on execution, and, therefore, absolutely nothing realized from a judgment for tort, nevertheless a judgment may be obtained, is, in the opinion of the court, unrealistic and impractical reasoning.

The Fordyce case, supra, has not been overruled and has been cited with approval repeatedly. No case in Arkansas has been found by the court, and none has been called to its attention, indicating a departure from this doctrine. In Arkansas Valley Cooperative Rural Electric Co. v. Elkins, 200 Ark. 883, 141 S.W.2d 538, 541, the Arkansas Supreme Court held that a non-profit cooperative corporation could not be held liable for the tort of an employee, Ark.Stats.1947, Sec. 64-1525, hereinafter discussed, may dictate a contrary result in the case of such cooperatives now. In so holding the court pointed out that the funds created by non-profit sharing corporations are in the nature of trust funds, and specifically referred to the Fordyce case, supra, as authority for "[denying] liability of such (charitable) corporations in tort actions." It is noteworthy that the statute under which the cooperative was organized enumerated among the corporate powers "To sue and be sued, complain and defend, in its corporate name", Pope's Dig. § 2318, and in disposing of the case, the court observed that whereas it could be sued to enforce contracts, it could not be made to respond in tort, because the statute conferred no such authority. This distinction was made in another Arkansas case, Arkansas Baptist College et al. v. Wilson, 200 Ark. 1189, 138 S.W.2d 376, 377, wherein it was held that Arkansas Baptist College, incorporated under Ark.Stats.1947, Sec. 64-1301 et seq., was subject to suit on contract under the provisions of the statute and its articles of association, but pointed out that "if this were an action to recover for the tort of the trustees, then appellants would be protected under the doctrine of the Fordyce case, supra."

Chapter 13, Ark.Stats.1947, Secs. 64-1301 to 64-1312, inclusive, prescribes the manner of organizing benevolent and mutual benefit corporations. It specifically refers to schools, colleges, medical, mechanical, agricultural or other associations "organized for the promotion of literature, education, science or art, or any association organized for the promotion of bodily or mental health."

Sec. 64-1306 provides, inter alia: "Such corporation and association shall have the capacity of suing and being sued and is authorized to do any and all things necessary, convenient, useful or incidental to the attainment of its purposes as fully and to the same extent as natural persons lawfully might or could do, as principals, agents, contractors, trustees or otherwise."

The defendant contends that this provision makes St. Edwards subject to a suit for tort, but such provision applies only to contracts or other acts necessary to be done by the association or corporation for the execution of the objects of its organization and does not authorize a suit against the hospital in this case for it or its employees' tort.

Defendant also relies upon Ark.Stats. 1947, Sec. 64-1525, Acts of 1947, No. 362, which provides that: "All cooperative corporations and associations heretofore or hereafter organized under the laws of the State of Arkansas shall hereafter be liable and subject to being sued in the courts of the state for their torts resulting from the negligent acts or their agents, servants and employees committed in the scope of their employment for said cooperatives."

This statute has not been construed by the Supreme Court of Arkansas, and, therefore, it is necessary for this court to construe it so as to give effect to the intention of the legislature. By giving the usual and common meaning to the language used, it appears obvious that only cooperative corporations and associations are affected. Certainly, if the legislature had intended to include all organizations not here-

144

tofore liable for their torts, charitable or otherwise, it would have said so. Thus, it follows that unless St. Edwards is a cooperative corporation Sec. 64-1525 is not applicable. This may or may not, and in all probability will not, present a factual question, but if it does it should be determined at the trial on the merits. A cooperative corporation is created by a banding together of persons for their common advantage or advancement, financial or otherwise, and is organized for the mutual benefit of its members, whereas a charitable organization is organized for some benevolent purpose for the benefit of the public or an indefinite class thereof. It is doubtful that a cooperative corporation could qualify as a charitable organization without losing its character as a cooperative, but be that as it may, the court is of the opinion that Sec. 64-1525 does not apply to all charitable organizations and does not destroy the rule against tort liability protecting such organizations. The allegation of the complaint that St. Edwards is a charitable non-profit corporation is sufficient for purposes of the motion to dismiss. Should it be established that St. Edwards is a cooperative corporation, then the court will dispose of such questions as are raised by Sec. 64-1525.

■ The court concludes that under the law of Arkansas, a charitable corporation is "not subject to suit for tort" within the contemplation of Sec. 66-517, with the possible exception of a cooperative, on which the court expresses no opinion until properly confronted with the question.

■ It is necessary to consider the constitutional objections raised by the defendant, the first of which is that the due process clause of the 14th Amendment is violated. Freedom to contract is included among the liberties protected by that clause. Allgeyer v. State of Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832; West Coast Hotel Co. v. Parrish et al., 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330. However, such freedom is not an absolute one and must yield at times to regulation and restraint imposed by the State for the public good under its police power. As stated by the court in West Coast Hotel Co. v. Parrish, supra, 300 U.S. page 391, 57 S.Ct. page 581: "Liberty under the Constitution is thus necessarily subject to the restraints of due process, and regulation which is reasonable in relation to its subject and is adopted in the interest of the community is due process."

■ The Arkansas Legislature considered this a proper field for legislation. It was prompted by the desirability of affording injured persons some compensation for injuries received through the tortious conduct of organizations and agencies not subject to tort liability. By this method, merely permissive, the public interest may be served in two ways, the preservation of the no tort liability doctrine in proper cases and the relief of deserving persons injured by such organizations. No doubt the legislature was apprised of the fact that such organizations and agencies were purchasing liability policies which were, in all probability, worthless if the insurance company chose not to respond, and wished to remedy this situation by corrective legislation. There is nothing compulsory about the legislation, and the various insurance companies may contract or not contract, as they choose. If they choose to do so, their complete freedom to contract is impaired to the extent set forth in the statute. As stated above, this impairment is amply justified by the commensurate enhancement of the public interest. Therefore, this legislation is not unconstitutional as violative of the due process clause. This result in no way conflicts with the decision of the Supreme Court in Allgeyer v. State of Louisiana, supra. Until overruled by the Supreme Court, this court will follow that decision in any case with the same or reasonably identical facts. It may or may not work to prevent the provisions of this legislation from attaching to a contract of insurance, depending upon all the facts concerning the issuance of the policy.

■ Turning to the equal protection clause of the 14th Amendment, the court finds no merit in defendant's contention that the statute in question violates any right of defendant secured by that clause.

It must appear that the statute arbitrarily and unreasonably discriminates in favor of one individual or class over another. There is no discrimination against this particular defendant in favor of other insurance companies. All are affected exactly alike. Any discrimination in favor of injured plaintiffs, in that the latter may proceed directly against the insurance carrier, is neither arbitrary nor unreasonable. If this be a discrimination, it is, as discussed under the due process contention, a permissive legislative classification. It is not fatal because the legislature singled out this particular field to authorize a direct cause of action. As stated in West Coast Hotel Co. v. Parrish, supra, 300 U.S. page 400, 57 S.Ct. page 585: "This Court has frequently held that the legislative authority, acting within its proper field, is not bound to extend its regulation to all cases which it might possibly reach. The Legislature 'is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.' If 'the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' "

The final contention of unconstitutionality under the Constitution of the United States concerns Art. 1, Sec. 10, which reads, inter alia: "No State shall * * * pass any * * * Law impairing the Obligation of Contracts, * * *."

 The legislation in question was enacted in 1947. One provision thereof, Sec. 66-519, provides that "the terms and provisions of this act shall become a part of any insurance policy so carried, regardless of the terms of the policy itself." As to insurance issued after the date of enactment, there would be no impairment of the obligation of contracts as condemned by this clause. As to insurance contracts in existence at the time, there may be a question. The facts pertaining to the policy in this case do not appear from the complaint, but it is noted that the injuries were received in 1950, some three years after the enactment of the legislation. When these facts are established, the court will dispose of any questions which may be presented under this provision of the Constitution.

As to the contention that the due process and equal protection clauses of the Constitution of the State of Arkansas are violated, the court finds such contention to be without merit, and accordingly, it is rejected.

The motion to dismiss filed by defendant should be overruled and an order to that effect will be entered.