Andrew Baxter LOW, Gary L. Low and Merrily Low  *v.*
INSURANCE COMPANY of NORTH AMERICA,
International Insurance Company, Industrial Indemnity
Company, Lexington Insurance Company (AIG), and
Niagara Fire Insurance Company

05-181                                                    220 S.W.3d 670

Supreme Court of Arkansas
Opinion delivered December 15, 2005

[Rehearing denied January 19, 2006.*]

---

* GLAZE and GUNTER, JJ., not participating.

*Wilson, Engstrom, Corum & Coulter,* by: *Gary D. Corum* and *Nate Coulter* for appellants/ cross-appellees Andrew Baxter Low, Gary L. Low and Merrily Low.

*Watts, Donovan & Tilley,* by: *Richard N. Watts, Debbie S. Denton,* and *Staci Dumas Carson,* for appellees Insurance Company of North America, International Insurance Company, and Industrial Indemnity Company.

*Barber, McCaskill, Jones & Hale, P.A.,* by: *Glenn W. Jones* and *Cynthia W. Kolb,* for appellee Niagara Fire Insurance Company.

*Bridges, Young, Matthews & Drake PLC,* by: *Stephen A. Matthews,* for appellee/cross-appellant Lexington Insurance Company.

ANNABELLE CLINTON IMBER, Justice. On October 5, 1991, Appellant Andrew Low was attending a Fall Camporee with the Quapaw Area Council Boy Scouts of America (the Boy Scouts) when he fell approximately thirty feet from a bluff located adjacent to the campsite area. As a result of the fall, Andrew suffered severe lacerations, a fractured skull, compression fractures of his spine, cracked ribs, a collapsed lung, neurological, ophthalmological, and glandular damage, and various other physical injuries. On October 4, 1994, Andrew and his parents, Appellants Gary and Merrily Low, sued the Boy Scouts. The Boy Scouts moved for summary judgment, arguing that it was a charitable organization and immune from tort liability. This motion was granted at a hearing on February 2, 1999, and an order was entered on March 25, 1999.

Prior to the entry of summary judgment in favor of the Boy Scouts, Appellants propounded interrogatories and discovery requests on August 5, 1998, aimed at discovering any insurance coverage the Boy Scouts might have. Appellants then filed an amended and substituted complaint on March 23, 1999, for the sole purpose of naming the Boy Scouts' liability insurance carrier, Insurance Company of North America (INA), pursuant to the direct-action statute, Ark. Code Ann. § 23-79-210 (Repl. 2004).[1]

---

[1] Ark. Code Ann. § 23-79-210 states:

(a)(1) When liability insurance is carried by any cooperative nonprofit corporation, association, or organization, or by any municipality, agency, or subdivision of a municipality, or of the state, or by any improvement district or school district, or by any other organization or

Appellants alleged that INA was directly liable for Andrew's injuries as a result of the Boy Scouts' negligence, to the extent of its coverage under the policy. On July 19, 2000, the circuit court dismissed the claims of Andrew's parents because their claims were filed after the statute of limitations had expired. Andrew's claims survived dismissal because he did not reach the age of majority until March 2, 1997, and had three years to bring the suit under Ark. Code Ann. § 16-56-116(a) (Supp. 2005).

On July 24, 2001, Appellants named the following excess-liability insurance carriers as additional defendants: International Insurance Company (International), Industrial Indemnity Company (Industrial), Lexington Insurance Company (Lexington), Niagara Fire Insurance Company (Niagara), Planet Insurance Company (Planet), Federal Insurance Company (Federal), National Surety Insurance Company (National), and Gulf Insurance Company (Gulf). Planet, Federal, National, and Gulf were eventually dismissed from the suit.

---

association of any kind or character and not subject to suit for tort, and if any person, firm, or corporation suffers injury or damage to person or property on account of the negligence or wrongful conduct of the organization, association, municipality, or subdivision, its servants, agents, or employees acting within the scope of their employment or agency, then the person, firm, or corporation so injured or damaged shall have a direct cause of action against the insurer with which the liability insurance is carried to the extent of the amounts provided for in the insurance policy as would ordinarily be paid under the terms of the policy.

(2) The insurer shall be directly liable to the injured person, firm, or corporation for damages to the extent of the coverage in the liability insurance policy, and the plaintiff may proceed directly against the insurer regardless of the fact that the actual tortfeasor may not be sued under the laws of the state.

(b) Any of the organizations or entities not subject to suit for tort described in subsection (a) of this section and the officers of those organizations or entities upon the request of any person so injured or damaged shall disclose the existence of any liability insurance, the name of the insurer, and the terms, amounts, and limits provided by the policy or policies.

(c)(1) Nothing in this section shall be deemed to require the organization or entity not subject to suit for tort to carry liability insurance. This section provides only for a direct action against the insurer by the injured or damaged person in the event liability insurance is so carried.

(2) The substance of this section shall by operation of law be a part of any liability insurance policy so carried, notwithstanding the terms of the policy itself, and any limitation in any policy restricting the right to recover to a judgment's first being obtained against a tortfeasor shall be void.

On August 5, 2004, INA, International, and Industrial filed a motion to dismiss, arguing that, pursuant to this court's decisions in *Clayborn v. Bankers Standard Ins. Co.*, 348 Ark. 557, 75 S.W.3d 74 (2002), and *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004), the Boy Scouts were never immune from suit and thus a direct action against the insurers was not proper. Shortly thereafter, Niagara and Lexington filed similar motions. On October 25, 2004, the circuit court entered a final order dismissing all the remaining insurers with prejudice. Appellants now appeal the final dismissal order. This case was certified to our court by the Arkansas Court of Appeals as a case involving issues of statutory interpretation and overruling of precedent. Ark. Sup. Ct. R. 1-2(b)(5), (6) (2005).

For their primary point on appeal, Appellants request that we overrule our decision in *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004). As a general rule, we are bound to follow prior case law under the doctrine of *stare decisis*, a policy designed to lend predictability and stability to the law. *Scamardo v. Jaggers, supra; Aka v. Jefferson Hosp. Ass'n, Inc.*, 344 Ark. 627, 42 S.W.3d 508 (2001). Indeed, it is well settled that "precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." *Scamardo v. Jaggers, supra* (citing *State Office of Child Support Enforcem't v. Mitchell*, 330 Ark. 338, 954 S.W.2d 907 (1997)). Our test is whether adherence to the rule would result in "great injury or injustice." *Id.* (citing *Aka v. Jefferson, supra*). In the instant case, Appellants argue "[t]hat test is met and exceeded by the calamity visited on Appellants by the trial court's dutiful application of this Court's recent pronouncements in *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004)." Specifically, Appellants' claims against the Boy Scouts were first dismissed based on the circuit court's understanding of the charitable-immunity doctrine. Then, after our court's decisions in *Clayborn v. Bankers Standard Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002), and *Scamardo v. Jaggers, supra*, the circuit court also dismissed Appellants' direct-action claims against the Boy Scouts' liability insurance carriers on the basis that the Boy Scouts were only immune from liability, not from suit. According to Appellants, this result "[left] the Low family with no remedy at all — through no fault of theirs or of their counsel."

In dismissing Appellants' claims against the insurance companies, the circuit court relied on rationale from two recent decisions by this court stating that charitable organizations are not

necessarily immune from suit. The first case to expressly note that not all charitable organizations were immune from suit, and consequently not subject to the direct-action statute, was *Clayborn v. Bankers Standard Ins. Co., supra.* Two years later, in 2004, we formally adopted the *Clayborn* rationale in *Scamardo v. Jaggers, supra.* However, the language delineating the scope and impact of the charitable-immunity doctrine has been developing for over a century. An analysis of our case law reveals that, over time, subtle changes in the language used to explain the charitable-immunity doctrine have eventually resulted in drastically different treatment of charitable organizations.

In *Fordyce v. Woman's Christian Nat. Library Ass'n*, 79 Ark. 550, 96 S.W. 155 (1906), our court discussed the policy underlying the charitable-immunity doctrine. After determining that the appellee library was a charitable organization, the court stated, "We are of opinion that in this state the property of a charity cannot be sold under execution issued on a judgment rendered for the nonfeasance, misfeasance, or malfeasance of its agents or trustees." *Id.* at 559, 96 S.W. at 158. In support of this conclusion, the court noted that the agents and trustees of charities have a duty to the public to protect the charity and its funds and explained:

> The immunity of the property of a charity from sale under execution rests on special grounds. The property of a corporation organized solely for charitable purposes is exclusively dedicated to public uses, as much so as the streets and alleys of a town or city; for this purpose the corporation is a mere trustee. It is of primary importance to the public that the trust shall be perpetuated. The trustees of the corporation are usually unsalaried agents, devoting their time and labor to the use and benefit of the public. For their own wrongs and misdeeds they are personally answerable . . . . If the doctrine of respondeat superior is applied to them, it follows that along with their other powers, they possess an implied power to destroy, by a willful violation of their duties, by collusion, or by negligence, the public interests that they are selected to preserve. Any conclusion that tends to support that view must leave out of consideration the public; that is to say, the party most deeply interested. To say that the trustees may by their negligence destroy the charity is simply to say that they may do indirectly and by inadvertence what they cannot do directly.

*Id.* at 561-62, 96 S.W. at 159-160.

Fifty years later, the United States District Court for the Western District of Arkansas was asked to determine whether a plaintiff had a right to file a direct action against a liability insurance carrier under Ark. Stats. 1947, Sec. 66-517 (prior version of the direct-action statute, now codified at Ark. Code Ann. § 23-79-210). *Michael v. St. Mercury Indemnity Co.*, 92 F. Supp. 140 (Ark. W.D. 1950). Judge John E. Miller concluded, based on our court's statements in the *Fordyce* case, that "under the law of Arkansas, a charitable organization is 'not subject to suit for tort' within the contemplation of Sec. 66-517 . . . ." *Id.* at 144. Judge Miller further noted:

> It is true that the [*Fordyce*] court did not hold that the charitable association could not be sued in the first instance. The facts of the case did not require a decision of that question. The trustees were then and are now personally answerable for their own torts, as are their employees. But, a charitable corporation . . . is operated on a non-profit basis, and all of its funds are committed to the operation and furtherance of its charitable purpose. There is no fund set aside or available for the payment of tort damages. If it were otherwise the corporation could not qualify as charitable. . . . And, to say that although the trust fund of the corporation cannot be reached on execution, and therefore, absolutely nothing realized from a judgment for tort, nevertheless a judgment may be obtained, is, in the opinion of the court, unrealistic and impractical reasoning.

*Id.* at 142-43. Additionally, our court reaffirmed the *Fordyce* rule that charitable organizations are immune from execution on their property in *Crossett Health Center v. Croswell*, 221 Ark. 874, 256 S.W.2d 548 (1953), where we stated, "In Arkansas we are committed to the rule that an organization maintained exclusively for charitable purposes will be protected against execution, in contradiction of the doctrine *respondeat superior*." *Id.* at 882, 256 S.W.2d at 548.

A few years later, in *Cabbiness v. City of North Little Rock*, 228 Ark. 356, 307 S.W.2d 529 (1957), the vernacular of the court changed slightly. In reviewing the trial court's sustaining of the Boys' Club's demurrer, this court cited *Fordyce v. Woman's Christian Nat. Library Ass'n, supra,* and stated, "The Fordyce cases were decided in 1906 and the rule of immunity as a charitable corporation from *tort liability*, as there recognized, has become a rule of property in this State." *Cabbiness v. City of North Little Rock*, 228 Ark. at 363, 307 S.W.2d at 533 (emphasis added). The above-quoted language represents a significant shift in the court's phrase-

ology from the *Fordyce* language, that charitable organizations are immune from execution on their property, to a new proposition, that charitable organizations are immune from tort liability.

The premise that a charitable organization was immune from tort liability was reiterated in *Helton v. Sisters of Mercy of St. Joseph's Hospital*, 234 Ark. 76, 351 S.W.2d 129 (1961). In *Helton*, Sharon Helton suffered injuries during a procedure at St. Joseph's Hospital. The Heltons sued the hospital and staff members. The hospital filed a motion to dismiss, arguing that it was a public charity, and thus not liable in tort. *Id.* The trial court granted the motion to dismiss, and the Heltons appealed. On appeal, this court examined the question of whether, as a public charity, the hospital was nonetheless liable in tort. The court determined that the hospital was not liable in tort, and held:

> [S]ince the appellee is a public charity as a matter of law and is therefore not liable in tort . . . *the trial court did not err in dismissing both complaints.* This does not mean, however, that the little girl and her parents are without any remedy. Of course, the individual or individuals alleged to have caused the injuries by their negligence are not immune to a suit for damages, and *Ark. Stat. § 66-3240 gives the injured parties in a case of this kind a direct cause of action against any insurance company that has issued a liability policy applying to the situation.*

*Helton v. Sisters of Mercy of St. Joseph's Hospital*, 234 Ark. at 83-84, 351 S.W.2d at 133 (emphasis added). Notably, the court held that, as the hospital was not liable in tort, the trial court did not err in dismissing the complaint against it. Additionally, the above-quoted language from the *Helton* court strongly suggests that under the direct–action statute (then Ark. Stat. § 66-3240) the plaintiff had a right to file a direct action against the charitable organization's liability insurance carriers.

A brief statement by the court in the case of *Ramsey v. American Automobile Insurance Co.*, 234 Ark. 1031, 356 S.W.2d 236 (1962), reaffirmed the suggestion in *Helton* that the direct–action statute authorizes an action against the liability insurers of a charitable organization. *Id.* at 1032, 356 S.W.2d at 237 ("As a charity the Salvation Army is not subject to an action in tort, but it carried liability insurance with the appellee. This is a direct action against the insurer, pursuant to Ark. Stats. 1947, § 66-3240"). *See also Williams v. Jefferson Hospital Ass'n*, 246 Ark. 1231, 442 S.W.2d 243 (1969)(hospital as a charitable organization ex-

empt from tort liability under the charitable-immunity doctrine). Thirty years later, the *Helton* rationale that a charitable organization could be dismissed from a suit and its liability insurance carrier be subject to a direct action, was applied in the case of *George v. Jefferson Hospital Ass'n*, 337 Ark. 206, 987 S.W.2d 710 (1999). In that case, the court found that the defendant-hospital was entitled to assert the charitable-immunity doctrine. We also stated, "Permitting hospitals such as JMRC to raise this defense may seem harsh to injured parties, but our laws provide a remedy in such cases whereby the entity's insurance carrier may be sued directly." *Id.* at 214-215, 987 S.W.2d at 714 (citing the direct-action statute, Ark. Code Ann. § 23-79-210).

In the case of *Smith v. Rogers Group, Inc.*, 348 Ark. 241, 72 S.W.3d 450 (2002), our court annunciated a distinction between a party's immunity from *suit* and its immunity from *liability*, the distinction later used to support the court's decisions in *Clayborn* and *Scamardo*. In *Smith*, the plaintiffs filed a suit against Rogers Group, Inc., a contractor who had done highway work for the Arkansas Highway and Transportation Department (AHTD). The suit also named Rogers' two insurers as defendants. *Id.* The trial court granted summary judgment on the grounds of acquired immunity and the plaintiff appealed. On appeal, our court upheld the grant of summary judgment and also discussed the appellants' argument that the direct-action statute authorized an action against the insurers. The *Smith* court specifically noted that the direct-action statute had been applied to "the insurers of charitable or nonprofit organizations." *Id.* at 256, 72 S.W.3d at 459 (citing *Cherry v. Tanda, Inc.*, 327 Ark. 600, 940 S.W.2d 457 (1997); *Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 925 S.W.2d 395 (1996); *Berry v. Saline Memorial Hosp.*, 322 Ark. 182, 907 S.W.2d 736 (1995); *Jarboe v. Shelter Ins. Co.*, 317 Ark. 395, 877 S.W.2d 930 (1994)). This court then determined that the direct-action statute was not applicable in the context of the acquired-immunity doctrine because such immunity was not immunity from suit; rather, it was immunity from liability. *Id.* at 257, 72 S.W.3d at 460. The *Smith* court also noted that the direct-action statute was not applicable because the plaintiff was not injured "on account of the negligence or wrongful conduct of the organization[.]" The plaintiff in *Smith* was attempting to recover from Rogers' insurers, but Rogers was not negligent in the performance of its contract. Thus, the insurers could not be held responsible under the direct-action statute. *Id.* at 257, 72 S.W.3d at 460.

Two years later, we handed down the decision in *Clayborn v. Bankers Standard Ins. Co., supra.* In *Clayborn*, Linda Witson was employed by Forrester–Davis Development Center, a nonprofit corporation that had liability insurance coverage with Bankers Standard Insurance Company. Ms. Witson drove a van to the Clayborn residence to pick up the children and transport them to the Forrester–Davis facility. In the process of picking up the children, Ms. Witson ran over Meranda Clayborn. *Id.*

Meranda's mother, Appellant Kathleen Clayborn, filed a direct-action complaint against Bankers, seeking damages for the negligent acts of Ms. Witson. Later, she amended her complaint to name Forrester–Davis and Ms. Witson as additional defendants, but eventually moved for a voluntary dismissal without prejudice as to her claims against them. Finally, the trial court granted Bankers's motion to dismiss, based on the ground that a direct cause of action against Bankers was not allowed under the direct-action statute. *Id.* On appeal, this court correctly noted that the direct-action statute was not applicable because the appellant did not plead facts to suggest that "Forrester–Davis is a nonprofit corporation that would be immune from suit." *Id.* at 565, 75 S.W.3d at 179. Furthermore, the appellant failed to cite any case law holding that nonprofit corporations are *ipso facto* immune from suit. *Id.* at 156, 75 S.W.3d at 178. The court went on to address the appellant's suggestion that Forrester–Davis was not subject to suit because it was a charitable organization. After concluding that the charitable-organization question had not been raised at trial and therefore was not properly preserved for appeal, the *Clayborn* court noted, "We have never said that charitable organizations are altogether immune from *suit*." *Clayborn v. Bankers Standard Ins. Co.*, 348 Ark. at 566, 75 S.W.3d at 179 (emphasis in original). The court, in *dicta*, then proceeded to apply the *Smith* distinction between "immunity from suit" and "immunity from liability" stating:

> Our analysis indicates that a charitable organization may have suit brought against it, but such judgment may not be executed against the property of the charity. We conclude that even if facts had been pled to allege that Forrester–Davis is a charitable organization, we would nevertheless affirm the trial court's finding that Ark. Code Ann. § 23-79-210 does not apply because we have never held that charitable organizations are completely immune from suit, but rather, we have only held that they are immune from execution against their property.

*Id.* at 566, 75 S.W.3d at 180.

While the *Smith* distinction made sense in the context of the acquired-immunity doctrine, such a distinction does not necessarily apply in the context of the charitable-immunity doctrine, especially in view of our precedent to the contrary. As set forth previously in this opinion, our early cases explained the charitable-immunity doctrine in terms of immunity from execution on property. *See Crossett Health Center v. Croswell, supra; Fordyce v. Woman's Christian Nat. Library Ass'n, supra.* Over the years, however, this court has interpreted the charitable-immunity doctrine as preventing *suits* against charitable organizations and not merely allowing a defense to liability. *See Cabbiness v. City of North Little Rock, supra; Helton v. Sisters of Mercy of St. Joseph's Hospital, supra; Williams v. Jefferson Hospital Ass'n, supra; George v. Jefferson Hospital Ass'n, supra; Smith v. Rogers Group, Inc., supra.* By "borrowing" the *Smith* distinction between "immunity from suit" and "immunity from liability" and applying it in the context of charitable immunity, albeit in *dicta*, the court took an ominous step away from our century of precedent.

Two years after the *Clayborn* decision, this court was asked to apply the *Clayborn* court's distinction between immunity from suit and immunity from liability, even though that distinction was merely *dicta* and not part of the holding in *Clayborn. Scamardo v. Jaggers,* 356 Ark. 236, 149 S.W.3d 311 (2004). In *Scamardo,* June Scamardo sued Dr. Robert Jaggers, Sparks Regional Medical Center, and Steadfast Insurance Company alleging negligence. She further alleged in the complaint that Sparks might claim immunity under the charitable-immunity doctrine, and that Steadfast, as the liability insurance carrier for Sparks, was subject to a direct action pursuant to Ark. Code Ann. § 23-79-210. *Id.* Sparks responded by admitting that it was a not-for-profit corporation and its assets were protected from execution by the charitable-immunity doctrine. Citing our decision in *Clayborn,* Sparks further contended that it was not immune from suit and, consequently, Steadfast was not a proper defendant. *Id.* The trial court dismissed Steadfast and Scamardo appealed, arguing that the *Clayborn* decision should be overruled, or in the alternative, limited to its facts.

In rejecting the point raised on appeal, this court examined numerous cases cited by Scamardo as being in conflict with *Clayborn. Scamardo v. Jaggers,* 356 Ark. at 245, 149 S.W.3d at 316. Specifically, the *Scamardo* court examined the above-quoted pas-

sage from *Helton v. Sisters of Mercy of St. Joseph's Hospital*, 234 Ark. 76, 351 S.W.2d 129 (1961), where we stated:

> [S]ince the appellee is a public charity as a matter of law and is therefore not liable in tort . . . *the trial court did not err in dismissing both complaints.* This does not mean, however, that the little girl and her parents are without any remedy. Of course, the individual or individuals alleged to have caused the injuries by their negligence are not immune to a suit for damages, and *Ark. Stat. § 66-3240 gives the injured parties in a case of this kind a direct cause of action against any insurance company that has issued a liability policy applying to the situation.*

*Helton v. Sisters of Mercy of St. Joseph's Hospital*, 234 Ark. at 83-84, 351 S.W.2d at 133 (emphasis added). Notably, the holding in *Helton* does not square with either the *Scamardo* or the *Clayborn* rationale that charitable organizations can be sued. While the *Helton* court did use the "immune from liability" language, it nonetheless affirmed the dismissal of the complaints against the hospital and thereby upheld the hospital's immunity from suit. Additionally, and more compelling, the court went on to note that the direct-action statute, Ark. Stat. § 66-3240, "gives the injured parties in a case of this kind a direct cause of action against any insurance company that has issued a liability policy applying to the situation." *Id.* This statement, coupled with the above-quoted language, necessarily points to only one conclusion: The hospital, a charitable organization, was correctly dismissed from the suit as immune from liability in tort, and consequently, the direct-action statute provides a cause of action against the hospital's liability insurance carriers.

This statutory interpretation — that immunity from liability in tort constitutes immunity from suit under the direct-action statute — governed our case law for over forty years. *See Ramsey v. American Automobile Insurance Co.*, 234 Ark. 1031, 356 S.W.2d 236 (1962); *Williams v. Jefferson Hospital Ass'n*, 246 Ark. 1231, 442 S.W.2d 243 (1969); *Harvill v. Community Methodist Hospital Ass'n*, 302 Ark. 39, 786 S.W.2d 577 (1990); *Jarboe v. Shelter Ins. Co.*, 317 Ark. 395, 877 S.W.2d 930 (1994); *National Bank of Commerce v. Quirk*, 323 Ark. 769, 918 S.W.2d 138 (1996); *George v. Jefferson Hospital Ass'n*, 337 Ark. 206, 987 S.W.2d 710 (1999); *Smith v. Rogers Group, Inc.*, 348 Ark. 241, 72 S.W.3d 450 (2002). When a statute has been construed, and that construction has been consistently followed for many years, such construction ought not be

changed. *Morris v. McLemore*, 313 Ark. 53, 852 S.W.2d 135 (1993). As time passes, the interpretation given a statute becomes part of the statute itself. *Id.*

The *Scamardo* opinion further states:

> The *Helton* court specifically noted, however, that 'the individual or individuals alleged to have caused the injuries by their negligence are *not immune to a suit for damages*, and Ark. Stat. § 66-3240 [now codified at § 23-79-210] gives the injured parties in a case of this kind a direct cause of action against any insurance company that has issued a liability policy applying to the situation.'

*Scamardo v. Jaggers*, 356 Ark. at 245, 149 S.W.3d 316. In the context of the *Helton* case, it is apparent that we were referring to the parties' right to sue the individuals *in their individual capacity* and separate from the hospital and not stating that the parties could sue the hospital. Moreover, the opinion in *Scamardo* fails to reconcile the language from the above-cited quote, that the direct-action statute "gives injured parties in a case of this kind a direct cause of action against any insurance company that has issued a liability policy applying to the situation," with its ultimate holding that no such cause of action exists under the direct-action statute.

The appellant in *Scamardo* also argued that the *Clayborn* decision was out of step with the decision in *George v. Jefferson Hospital Ass'n, supra.* In response, the *Scamardo* court quoted the following passage from *George*:

> The doctrine of charitable immunity has over a ninety-year history in Arkansas jurisprudence. *Grissom v. Hill*, 17 Ark. 483 (1856); *Hot Springs School District v. Sisters of Mercy*, 84 Ark. 497, 106 S.W. 954 (1907). The essence of the doctrine is that agencies, trusts, etc., created and maintained exclusively for charity may not have their assets diminished by execution in favor of one injured by acts of persons charged with duties under the agency or trust. *Crossett Health Center v. Croswell*, 221 Ark. 874, 256 S.W.2d 548 (1953). Through the years we have examined the doctrine in detail, finding it applicable to some entities claiming charitable-entity status and inapplicable to others. [Footnote omitted.] The doctrine obviously favors charities and results in a limitation of potentially responsible persons whom an injured party may sue. We, therefore, give the doctrine a very narrow construction. *Williams v. Jefferson Hospital Association, Inc.*, 246 Ark. 1231, 442

S.W.2d 243 (1969). But applying it narrowly does not mean that we will avoid its use in any appropriate circumstance.

*Scamardo v. Jaggers,* 356 Ark. at 246, 149 S.W.3d at 316-17 (quoting *George v. Jefferson Hospital Ass'n, supra*). According to the *George* court, "The doctrine [of charitable immunity] . . . results in a limitation of potentially responsible persons whom an injured party may sue." *George v. Jefferson Hospital Ass'n,* 337 Ark. at 211, 987 S.W.2d at 710. The *Scamardo* court, however, failed to explain or reconcile this statement with its holding that the doctrine does *not* limit a party's right to sue a charitable organization.

In short, our language delineating the scope of the charitable-immunity doctrine has undergone subtle, but significant, changes in the past century, culminating in the court's interpretation of the "not subject to suit for tort" language in the direct-action statute, Ark. Code Ann. § 23-79-210, as being synonymous with a charitable organization's immunity from tort liability. Our court embraced this statutory interpretation consistently for over forty years.

■ Then, in 2002, the court properly applied the distinction between immunity from liability and immunity from suit in the context of the acquired-immunity doctrine. *See Smith v. Rogers Group, Inc., supra.* Two years later, the *Smith* distinction was used, albeit mistakenly, in the context of the charitable-immunity doctrine. *Scamardo v. Jaggers, supra* (citing *dicta* in *Clayborn v. Bankers Standard Ins. Co., supra,* and *Smith v. Rogers Group, Inc., supra*). This represented a sharp break with our well-settled interpretation of the charitable-immunity doctrine and direct-action statute. The result is that our recent decision in *Scamardo v. Jaggers, supra,* is out of step with our precedent, and we hereby overrule it. To the extent that the *dicta* in *Clayborn v. Bankers Standard Ins. Co., supra,* is inconsistent with this opinion, it is also overruled.

### Cross-Appeal

On cross-appeal, Lexington argues that, if the court reverses the circuit court's dismissal of the insurance companies, we should also reverse the court's denial of its summary-judgment motion. Specifically, Lexington argues that, because the claim against it was not filed by Andrew until July 24, 2001, over four years after he reached majority, the claim is barred by the statute of limitations. Arkansas Code Annotated § 16-56-116(a) states:

> If any person entitled to bring any action under any law of this state is, at the time of the accrual of the cause of action, under twenty-one (21) years of age, or insane, that person may bring the action within three (3) years next after attaining full age, or within three (3) years next after the disability is removed.

Ark. Code Ann. § 16-56-116(a) (Supp. 2005). Ark. Code Ann. § 9-25-101(a) provides that the age of majority is reached at the age of 18, which Andrew reached on March 2, 1997. Thus, under section 16-56-116(a), he had until March 2, 2000, to file his suit against Lexington. Therefore, the amended complaint naming Lexington as a defendant will only survive the statute of limitations if it relates back to the date of the original complaint. *See George v. Jefferson Hospital Ass'n, supra* (where omission of insurer from original complaint not a mistake of identity as to proper party, no relation back of amended complaint for limitation purposes).

The Lows contend that the second amended complaint naming Lexington as a defendant relates back to an earlier filing. Relation back is governed by Ark. R. Civ. P. 15(c) which states:

> An amendment of a pleading relates back to the date of the original pleading when:
>
> (1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; or
>
> (2) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (1) is satisfied and, within the period provided by Rule 4(i) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Ark. R. Civ. P. 15(c) (2005). Lexington argues that, for an amended complaint to relate back to the original filing, it must be established that Lexington was given notice of the action within the statute-of-limitations period, and that the amended complaint cannot relate back because it had no notice of the action. The Lows argue that their failure to timely file against Lexington was the result of the Boy

Scouts' failure to disclose that it was insured by Lexington, and thus the lack of actual notice to Lexington must be excused.

In support of their argument that Lexington can be subject to suit despite late notice of the suit, the Lows offer several cases from other jurisdictions. Overwhelmingly, the rule seems to be that, when a claim by a third party is statutorily authorized against an insurer by virtue of a direct-action statute, the insurer cannot escape liability by claiming to have no notice of the claim. *See Auster Oil & Gas v. Stream*, 891 F.2d 570 (5th Cir. 1990); *Gonzales v. Carribean Carriers, Ltd.*, 379 F.Supp. 634 (D.P.R. 1974); *West v. Monroe Bakery*, 217 La. 189, 46 So. 2d 122 (1950). Notably, the issue in these cases is the insured's failure to give notice required by the insurance policy and not the failure to notify under the applicable rules of procedure. However, the underlying rationales seem to be applicable in this case as well. For example, in *West v. Monroe Bakery, supra*, the Louisiana court stated:

> We are told that it works a hardship on the insurer to be called on to defend an action of this kind, as he has had no prior knowledge of the accident and is not in a position to make a defense. As to the hardship and disadvantage under which the insurer labors, and the difficulty under which the injured party finds himself we think that the ends of justice require that the benefit of the doubt should be given to the injured party, who is in no way at fault, and whose loss was caused entirely by some one else, as against the insurer who has entered into the contract with full knowledge of the statute and for a monetary consideration.

*Id.* at 200. The Louisiana court went on to establish a balancing test, stating:

> Each case involving delayed notices must stand upon its own facts and circumstances. The Court may consider in balancing the equities, not only the time intervening between the accident and the date of notice to the insured, and whether or not the claim is a direct one by the injured persons . . . but also when the parties first discovered that substantial injury had been done or that a claim would be made; the time when the injured party discovered that insurance existed and knew the identity of the insurer; what prejudice to the insurance company's defense has been caused by the delay; the good faith of the insured and injured party; and the existence of any special circumstances, especially those indicating fraud or collusion.

*Id.* at 203. Here, the Lows first learned of the existence of Lexington's liability insurance coverage on April 20, 2001, and the complaint was amended to add Lexington as a defendant three months later, on July 21, 2001. Additionally, Lexington admitted in oral argument that it was not prejudiced by the late notice. Finally, Lexington's insured, the Boy Scouts, has not shown good faith in its dealings with the Lows. First, the Boy Scouts informed Lexington of the Lows' claim on March 13, 2001, a full month before notifying the Lows. Moreover, despite repeated requests for information on liability insurance coverage by the Lows, the Boy Scouts shirked its statutory duty to reveal Lexington's existence. Ark. Code Ann. § 23-79-210(b) ("Any of the organizations or entities not subject to suit for tort . . . upon the request of any person so injured or damaged *shall disclose* the existence of any liability insurance . . . ."). In light of these facts, we hold that notice can be imputed to Lexington.

◼ Lexington also argues that the amended complaint naming it as a defendant cannot relate back to the original complaint because the Lows have not established that Lexington "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Ark. R. Civ. P. 15(c)(2)(B) (2005). Rule 15, however, allows for relation back when the party knew *or should have known.* Here, even if Lexington was not aware of the action, it *should have known* about it. As stated above, the direct-action statute places an affirmative duty on the charitable organization to inform the plaintiff about its liability coverage. *See* Ark. Code Ann. § 23-79-210(b) ("Any of the organizations or entities not subject to suit for tort . . . upon the request of any person so injured or damaged *shall disclose* the existence of any liability insurance . . . ."). If the Boy Scouts had fulfilled its duty under the law and informed the Lows about Lexington's coverage, the Lows could have included Lexington in the suit before the statute of limitations ran. Thus, under these circumstances, we conclude the second amended complaint relates back to the filing of the original complaint and is not barred by the statute of limitations.

Reversed and remanded; cross-appeal affirmed.

Special Justices DONNA C. PETTUS and G. WILLIAM LAVENDER join.

GLAZE and GUNTER, JJ., not participating.