HORATIUS WILLIAMS v. JEFFERSON HOSPITAL ASS'N INC.

5-4949                                    442 S.W. 2d 243

Opinion Delivered June 9, 1969
[Rehearing denied July 14, 1969.]

1232

*Alonzo D. Camp* for appellant.

*Bridges, Young, Matthews & Davis* for appellee.

*Spitzberg, Mitchell & Hays* Amicus Curiae Brief.

LYLE BROWN Justice.   Horatius Williams brought a tort action against Jefferson Hospital Association, Inc., and two doctors.   The hospital moved for summary judgment in its behalf on the basis of our doctrine that charitable institutions are immune from tort liability. That motion was granted and Williams appeals.

The complaint alleges that Williams was admitted to Jefferson Hospital in Pine Bluff following a vehicular accident; that he was treated and observed for some seven hours; that not withstanding his serious condition he was negligently discharged by the doctors and an unnamed agent of the hospital; and that they released him to law enforcement authorities knowing that action would result in his being placed in "a common jail." For their alleged negligence in abandoning him after assuming

professional responsibility for treatment plaintiff prayed for actual and punitive damages.

To its motion for summary judgment, Jefferson Hospital attached a copy of its articles of incorporation which describe it as a charitable, scientific, educational, and non-profit organization. Other supporting affidavits were exhibited. The response to the motion for summary judgment did not deny the allegations of the motion; the court was asked—in the event it found Jefferson Hospital to be a charitable institution—to enter an order "abandoning the doctrine of charitable immunity from tort liability." The court entered an order finding Jefferson Hospital to be a charitable institution and dismissed it from the action.

Aside from electing not to controvert the hospital's assertion that it was in fact dedicated to the operation of a charitable facility, appellant concedes in his brief that Jefferson Hospital "falls into the category of charitable institutions, and, under present law, is exempt from tort liability under the charitable immunity doctrine." With that candid admission appellant presses the single point that our doctrine of charitable immunity from tort should be abolished.

Appellant advances most of those persuasive arguments favoring the uprooting of the doctrine and which are well known to lawyers and jurists. Charities, as many respected authorities contend, should not be placed beyond the reach of a rule of law generally applicable to most individuals and organizations; they assert that the value of life and limb is of greater importance than the property of a charity; that legal scholars who condemn the doctrine of charitable immunity are in the great majority; and that such immunity created by ancient judicial fiat is not consonant with modern day principles of social justice. The arguments are buttressed with citations reflecting a decided judicial trend toward relief, in various forms, from some or all the inequities of the rule.

We would be less than candid if we did not concede the collective argument to be impressive, forceful, and even tempting. But of course we are duty bound to examine the other view of the issue.

First, we are faced with our own case law, promulgated initially in 1906, in *Fordyce* v. *Woman's Christian Nat'l. Lib. Ass'n.*, 79 Ark. 550, 96 S.W. 155. It was there held that the property of a charitable institution could not be levied upon to satisy a judgment obtained by one who had been injured by the negligence of an employee of the Association. It was said that funds, as well as real property, held by and dedicated to public charity, were included in the exemption. The opinion in *Fordyce* relied strongly on *Grissom* v. *Hill,* 17 Ark. 483 (1856), concluding that the latter case established the exemption as a rule of property:

> We believe that the case of *Grissom* v. *Hill* was rightly decided; but, if we thought otherwise, we should think it inexpedient to reverse a rule of property so long acquiesced in. The Legislature can change the rule, if it likes; but it has shown no desire to do so.

In *Cabbiness* v. *City of North Little Rock,* 228 Ark. 356, 307 S.W. 2d 529 (1957), a unanimous court held that a boys' club, being a charitable corporation, was immune from tort liability; and that it was for the Legislature to effect a change because the immunity had become a rule of property.

The latest case in which this court considered the question of hospital immunity from tort judgment was *Helton* v. *Sisters of Mercy,* 234 Ark. 76, 351 S.W. 2d 129 (1961). In declining to overrule our position we said:

> It will be noticed that in the *Cabbiness* case it is stated that the rule of immunity of a charitable corporation from tort liability has become a rule of property. In *Pitcock* v. *State,* 91 Ark. 527, 121

S.W. 742, Chief Justice McCulloch, speaking for the Court, said: "Decisions which become rules of property should never be overruled, whether they are right or wrong." And in *Burel* v. *Grand Lodge I.O.O.F.*, 163 Ark. 131, 259 S.W. 369, it is said: "The decision has become a rule of property, and should not be disturbed, even if the court was otherwise disposed to do so."

Appellant argues that the harshness of the doctrine requires its abandonment. Concededly that attack would be more persuasive if our court applied the doctrine in a broad and liberal manner, as has been true in some jurisdictions. Our court has in fact given the term "charitable immunity" a rather narrow construction. "A hospital ... *free to all who are not pecuniarily able,* and supported partly by private contributions and partly by fees from patients, but producing no profit, is a purely public charity." (Italics supplied.) That statement is found in the early case of *Hot Springs School Dist.* v. *Sisters of Mercy,* 84 Ark. 497, 106 S.W. 954 (1907). In *Crossett Health Center* v. *Croswell,* 221 Ark. 874, 256 S.W. 2d 548 (1953), reference was made to those agencies, including hospitals, entitled to the immunity and they were described as created and maintained *exclusively for charity.* (Italics supplied.) In that case the hospital was found to fall short of "purely benevolent and charitable purposes essential to clothe its property with trust attributes." A tort judgment was affirmed. In *Helton,* supra, we discussed the many factors which led to the conclusion that the hospital was a public charity. Those were the articles of incorporation; the exemption from all forms of taxes; the free labor of the Sisters; and "its doors are always open to anyone, regardless of creed, needing hospitalization" irrespective of ability to pay. It would indeed be enlightening to know just how many hospitals in Arkansas which are designated as charitable institutions can meet the tests we have enumerated from the three cited cases.

Appellant points to our holding in *Parish* v. *Pitts*, 244 Ark. 1239, 429 S.W. 2d 45 (1968), in which we abrogated municipal immunity from tort liability. That decision is not controlling here and at most might be persuasive. *Parish* dealt exclusively with municipalities and a number of reasons there cited for subjecting them to tort liability are peculiar to units of government as compared with charitable institutions. The ability of the cities to spread by taxation the cost imposed by torts is one example. Again, we were there dealing with an antiquated doctrine that "the king can do no wrong."

There is another reason why the *Parish* case is not controlling. The Legislature acted within less than one year after *Parish* v. *Pitts*. By Act 165 of 1969 that holding was overturned. That Act declares the public policy to be that all political subdivisions of the State be immune from tort liability. The Act does require all such subdivisions to acquire public liability insurance on their vehicles. It is further provided that such governmental units may hear and settle tort claims against them. It can well be argued that this expression of legislative intent to retain governmental immunity would bring forward a similar expression in the field of charitable immunity if this court abrogated the latter rule.

Another factor to be considered is the broad impact that would result from renouncing the rule of tort immunity as it applies to charitable hospitals. If such hospitals are not entitled to the immunity then there are a multitude of similar charitable organizations which should likewise be subjected to liability. Some of them administer care to the crippled and persons otherwise afflicted, such as crippled children's clinics and homes for expectant unwed mothers; then there are orphans' homes and homes for the aged which are operated by charity and whose clientele are medically treated. We do not say that the varied problems which would result from the outright overruling of charitable immunity make it impossible to mitigate any harshness in the rule. We

do say it could much better be resolved by legislation based on comprehensive study than by this court. Doubtless the Legislature could evolve a method to lighten substantially the load of the injured and at the same time avoid any devastating impact on the involved charities. That procedure has been followed by the Legislature in at least four instances that are cited in *Parish* v. *Pitts,* supra. Likewise, by Act 165 of 1969, the harshness of municipal tort immunity was considerably reduced.

When we consider *collectively* the reasons we have recited which do not favor the overruling of charitable tort immunity of hospitals we conclude that appellant should not prevail.'

Affirmed.

HARRIS. C.J., not participating.

---

'The admission by appellant that Jefferson Hospital is a charitable institution is binding only for purposes of this particular case.