June D. SCAMARDO *v.* Dr. Robert JAGGERS; Sparks Regional Medical Center; and Steadfast Insurance Company

03-765                                                                              149 S.W.3d 311

Supreme Court of Arkansas
Opinion delivered February 26, 2004
[Rehearing denied April 1, 2004.]

*Law Offices of Charles Karr, P.A.*, by: *Shane Roughley* and *Charles Karr*, for appellant.

*Davis, Wright, Clark, Butt & Carithers, P.A.*, by: *Constance G. Clark* and *Sidney P. Davis*, for appellee Steadfast Insurance Co.

*Friday, Eldredge & Clark,* by: *Diane S. Mackey, Robert S. Shafer,* and *Kimberly A. Dickerson,* for *amicus curiae.*

Tom Glaze, Justice. In this case, appellant June Scamardo asks this court to overrule our decision in *Clayborn v. Bankers Standard Insurance Co.,* 348 Ark. 557, 75 S.W.3d 174 (2002). For the reasons discussed below, we decline to do so.

On November 21, 2002, Scamardo filed a lawsuit against Dr. Robert Jaggers, Sparks Regional Medical Center ("Sparks"), and Steadfast Insurance Company ("Steadfast"). In her complaint, Scamardo alleged that she underwent a popliteal artery bypass at Sparks on November 20, 2000, and was discharged to Healthsouth Rehabilitation Hospital in Fort Smith on November 28, 2000. While at Healthsouth, Scamardo was diagnosed with a severe staph infection in her leg. Her complaint alleged negligence against Dr. Jaggers and Sparks. Further, the complaint stated a belief that Sparks might claim to be immune from suit for tort under the charitable immunity doctrine. The complaint alleged that Steadfast, as the liability insurance carrier for Sparks, was subject to a direct cause of action pursuant to Ark. Code Ann. § 23-79-210 (Repl. 1999).

Sparks answered, admitting that it was a not-for-profit corporation and that it was protected by the charitable immunity doctrine. Sparks further admitted that its assets were immune from execution, but contended that, based on our decision in *Clayborn, supra,* Sparks was not immune from suit. Sparks also denied that its insurance carrier, Steadfast, was a proper substitute defendant that could be sued under Arkansas' direct action statute, § 23-79-210.

On March 25, 2003, Steadfast moved to be dismissed from the lawsuit. Relying on *Clayborn,* Steadfast submitted that charitable organizations, such as Sparks, may be sued even though their assets are immune from execution. In sum, Steadfast argued that, because Sparks could be sued, the direct action statute was inapplicable, and Steadfast should be dismissed as a party defendant. In response, Scamardo argued that *Clayborn*'s discussion of charitable immunity was dicta, and further contended that *Clayborn* contra-

dicted two earlier cases on the topic of charitable immunity. *See George v. Jefferson Hospital Assoc., Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999), and *Helton v. Sisters of Mercy of St. Joseph's Hospital*, 234 Ark. 76, 351 S.W.2d 129 (1961).

The trial court dismissed Steadfast on May 13, 2003, basing its dismissal on the *Clayborn* decision.[1] Scamardo appeals, arguing that this court should either overrule *Clayborn* or limit its holding; she also contends that the doctrine of charitable immunity should be abolished.

■ When reviewing a trial court's granting of a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *City of Dover v. City of Russellville*, 352 Ark. 299, 100 S.W.3d 689 (2003); *Clayborn, supra*. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* Our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.*; Ark. R. Civ. P. 8(a) (2003). We look to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Id.*; *Country Corner Food & Drug, Inc. v. First State Bank & Trust Co.*, 332 Ark. 645, 966 S.W.2d 894 (1998).

■ Before we address Scamardo's argument that *Clayborn* should be overruled, we dispose of her arguments regarding the continued viability of the doctrine of charitable immunity. Scamardo asks this court either to abolish the doctrine, or to conclude that the application of the doctrine leads to unconstitutional results. We are unable to reach either of these arguments. Al-

---

[1] The court also provided a certificate in accordance with Ark. R. Civ. P. 54(b), noting that "it would be a hardship and injustice to the parties in this case to proceed if . . . [the] language [in *Clayborn, supra*] is without the force of adjudication . . . . Judicial efficiency would be best served if the parties know whether or not the *Clayborn* decision prevents any and all execution against a charitable institution or its liability insurance carrier. A plaintiff does not file a medical malpractice lawsuit to seek what would in effect be a declaratory judgment, and neither a hospital nor its insurance carrier wishes to defend such a case."

though Scamardo raised these arguments in her brief in support of her response to Steadfast's motion to dismiss, the trial court did not explicitly rule on them. This court has repeatedly held that a party's failure to obtain a ruling is a procedural bar to this court's consideration of the issue on appeal. *See Bell v. Bershears*, 351 Ark. 260, 92 S.W.3d 32 (2002); *Doe v. Baum*, 348 Ark. 259, 72 S.W.3d 476 (2002); *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001); *Barker v. Clark*, 343 Ark. 8, 33 S.W.3d 476 (2000). This is true even of constitutional arguments. *Bell*, 351 Ark. at 268. The record in this case reflects that both issues were raised in the motions filed below; however, the trial court's order does not reflect any specific ruling on these issues. The order states simply that "[b]ased on the decision in *Clayborn* . . . , the motion of Steadfast Insurance Company should be and hereby is granted." Accordingly, we are precluded from reviewing them on appeal.

■ Turning to the merits of her remaining argument on appeal, Scamardo argues that this court should overrule our holding in *Clayborn*. In *Thiel v. Priest*, 342 Ark. 292, 28 S.W.3d 296 (2000), this court noted that while it does have the power to overrule prior decisions, it is necessary, as a matter of public policy, to uphold those decisions unless a great injury or injustice would result. *See also Murphy Oil USA, Inc. v. Unigard Security*, 347 Ark. 167, 61 S.W.3d 807 (2001); *Sanders v. County of Sebastian*, 324 Ark. 433, 922 S.W.2d 334 (1996)). In *Thiel*, we noted that "[t]he United States Supreme Court has recognized that adherence to precedent promotes stability, predictability, and respect for judicial authority." *Id.* at 300, 28 S.W.3d at 300 (citing *Sanders, supra*; *Zinger v. Terrell*, 336 Ark. 423, 985 S.W.2d 737 (1999)). As a general rule, we are bound to follow prior case law under the doctrine of *stare decisis*, a policy designed to lend predictability and stability to the law. *Aka v. Jefferson Hosp. Ass'n, Inc.*, 344 Ark. 627, 42 S.W.3d 508 (2001); *State Office of Child Support Enforcem't v. Mitchell*, 330 Ark. 338, 343 (1997) (citing *Parish v. Pitts*, 244 Ark. 1239, 1252, 429 S.W.2d 45, 52 (1968) (superseded by statute on other grounds)). Indeed, it is well settled that "[p]recedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." *Mitchell*, 330 Ark. at 343 (quoting *Parish*, 244 Ark. at 1252). Our test is whether adherence to the rule would result in "great injury or injustice." *Aka*, 344 Ark. at 641.

The holding Scamardo asks us to overrule, *Clayborn*, was a 2002 case involving both § 23-79-210 — the direct action statute — and the doctrine of charitable immunity. Briefly, the facts of that case were that appellant Clayborn's daughter was injured by the negligence of an employee of Forrester-Davis Development Center, a daycare organized as a nonprofit corporation. Clayborn filed a direct action against Forrester-Davis's insurer, Bankers Standard Insurance Company. Bankers responded by filing a motion to dismiss Clayborn's complaint, urging that it was not a proper party to the suit. Clayborn then added Forrester-Davis as a defendant. The trial court eventually dismissed the suit against Bankers, finding that a direct cause of action could not be allowed against Bankers under § 23-79-210, since Ark. Code Ann. § 16-120-103 (Supp. 2001) did not grant Forrester-Davis or its employees immunity from suit in tort. *Clayborn*, 348 Ark. at 560-61. On appeal, this court affirmed.

■ Relying on *Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 925 S.W.2d 395 (1996), and *Smith v. Rogers Group, Inc.*, 348 Ark. 241, 72 S.W.3d 450 (2002), this court held that § 23-79-210 only provides for direct actions against an insurer in the event that the organization at fault is immune from *suit* in tort. *Id.* at 564 (emphasis in original). Further, we held that § 23-79-210 was inapplicable to the facts presented by Clayborn because there was "nothing in the pleadings to show that Forrester-Davis is a nonprofit corporation that is immune from *suit* in tort. Because no showing is made of such alleged immunity, [Clayborn] is precluded from bringing a direct action against Forrester-Davis's insurer, Bankers." *Id.* (emphasis in original). Noting that nonprofit corporations generally have the power to sue and be sued, the court further pointed out that § 16-120-103 provides that the tort liability immunity statute shall not be construed to limit the liability of the nonprofit corporate entity itself for damages as a result of the torts of its employees. *Id.* at 565.

■■ Finally, the *Clayborn* court noted that this court has "never said that charitable organizations are altogether immune from suit." *Id.* at 566. On this subject, the court wrote the following:

> While we affirmed the trial court's dismissal of a case on the ground that the charitable organization was immune from liability in *George*

*v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999), no argument was raised in that case that a charitable organization is not subject to suit for tort, as was argued in the present case. We have repeatedly stated that the property of a charity cannot be sold under execution issued on a judgment rendered for the nonfeasance, misfeasance, or malfeasance of its agents or trustees. *See, e.g., Fordyce & McKee v. Woman's Christian Nat'l Library Ass'n*, 79 Ark. 550, 96 S.W. 155 (1906) (emphasis added). We have also recognized that the charitable-immunity doctrine as promulgated in *Fordyce* and its progeny has become a rule of property. [Citations omitted.] In addition, we stated in *Crossett Health Center v. Croswell*, 221 Ark. 874, 256 S.W.2d 548 (1953), "Judge Rose, [in *Fordyce*], commented on the statutory authority for suit, drawing a distinction between the right to sue and the power to execute in satisfaction of the judgment." *Croswell, supra* (citing *Fordyce, supra*). Our analysis indicates that a charitable organization may have suit brought against it and may have a judgment entered against it, but such judgment may not be executed against the property of the charity. We conclude that even if facts had been pled to allege that Forrester-Davis is a charitable organization, we would nevertheless affirm the trial court's finding that Ark. Code Ann. § 23-79-210 does not apply because *we have never held that charitable organizations are completely immune from suit, but rather, we have only held that they are immune from execution against their property.*

*Id.* at 566-67 (emphasis added).

Scamardo asserts that this recent case should be overruled for three reasons, the first of which is that "federal case law previously addressed this issue and came to the opposite conclusion." That case, *Michael v. St. Mercury Indemnity Co.*, 92 F. Supp. 140 (W.D. Ark. 1950), addressed whether St. Edward's Hospital was a nonprofit association not subject to an action for tort, and whether an injured person could have a direct cause of action against the hospital's insurer, St. Mercury. Citing *Fordyce v. Woman's Christian National Library Ass'n, supra*, the federal court held that a charitable corporation, such as the hospital in that case was alleged to be, was not subject to suit for tort within the contemplation of the direct action statute. *Michael*, 92 F. Supp. at 144.

The *Michael* case is not controlling here. We note first that federal court decisions are not binding authority for this court. *See, e.g., Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002). Further, the court in *Michael* also explicitly

recognized that this court, in *Fordyce*, "did not hold that the charitable association could not be sued in the first instance," because "the facts of that case did not require a decision on that question." *Michael*, 92 F. Supp. at 142. We believe that the federal district court misinterpreted *Fordyce*, which held that, although the property of a charity is not subject to execution, the charity may still be sued. If a nonprofit is *subject to suit*, then the direct action statute simply has no applicability.

Nevertheless, Scamardo suggests that prior case law of this court indicates that *Michael* reached the right result; in support of this contention, she cites the following six cases: *Crossett Health Center v. Croswell*, 221 Ark. 874, 256 S.W.2d 548 (1953); *Cabbiness v. City of North Little Rock*, 228 Ark. 356, 307 S.W.2d 529 (1958); *Helton v. Sisters of Mercy of St. Joseph's Hospital*, 234 Ark. 76, 351 S.W.2d 129 (1961); *Ramsey v. American Auto Ins. Co.*, 234 Ark. 1031, 356 S.W.2d 236 (1961); *Williams v. Jefferson Hospital Assoc.*, 246 Ark. 1231, 442 S.W.2d 243 (1969); and *George v. Jefferson Hospital Assoc., Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999).

In *Crossett Health Center, supra*, the court reaffirmed its rule that "an organization maintained exclusively for charitable purposes will be protected *against execution*," *Crossett*, 221 Ark. at 882 (emphasis added), but went on to hold that the Crossett Health Center had not put on sufficient evidence to establish its immunity as a benevolent charity within the meaning of the court's previous decisions on charitable immunity.

In *Cabbiness, supra*, the court simply held that, because the North Little Rock Boys' Club was a benevolent corporation, it was immune from *tort liability*. *Cabbiness*, 228 Ark. at 361. It is significant that the court made no comment about the Boys' Club's immunity *from suit*. *Helton, supra*, reaffirmed *Cabbiness*, noting that "to say that a public charity is *liable* in tort, we would have to overrule cases holding just the opposite." *Helton*, 234 Ark. at 80 (emphasis added). The *Helton* court specifically noted, however, that "the individual or individuals alleged to have caused the injuries by their negligence are *not immune to a suit for damages*, and Ark. Stat. § 66-3240 [now codified at § 23-79-210] gives the injured parties in a case of this kind a direct cause of action against any insurance company that has issued a liability policy applying to the situation." *Id.* at 83-84 (emphasis added).

The *Ramsey* case did not discuss the applicability of the charitable immunity doctrine, but simply stated that the case

involved a direct action against the Salvation Army's liability insurance carrier. And next, in *Williams v. Jefferson Hospital Ass'n, supra,* the court declined to abolish the doctrine of charitable immunity, concluding that such a responsibility was more properly within the province of the legislature.

Finally, and most recently, in *George v. Jefferson Hospital Ass'n, supra,* this court discussed the doctrine of charitable immunity as follows:

> The doctrine of charitable immunity has over a ninety-year history in Arkansas jurisprudence. *Grissom v. Hill,* 17 Ark. 483 (1856); *Hot Springs School District v. Sisters of Mercy,* 84 Ark. 497 (1907). The essence of the doctrine is that agencies, trusts, etc., created and maintained exclusively for charity may not have their assets diminished by execution in favor of one injured by acts of persons charged with duties under the agency or trust. *Crossett Health Center v. Croswell,* 221 Ark. 874, 256 S.W.2d 548 (1953). Through the years we have examined the doctrine in detail, finding it applicable to some entities claiming charitable-entity status and inapplicable to others. [Footnote omitted.] The doctrine obviously favors charities and results in a limitation of potentially responsible persons whom an injured party may sue. We, therefore, give the doctrine a very narrow construction. *Williams v. Jefferson Hospital Association, Inc.,* 246 Ark. 1231, 442 S.W.2d 243 (1969). But applying it narrowly does not mean that we will avoid its use in any appropriate circumstance.

*George,* 337 Ark. at 211.

Scamardo cites the foregoing cases as supporting the holding in *Michael,* and concludes that because these have all upheld the doctrine of charitable immunity, *Clayborn* must be wrong and should be overruled. Any inconsistency perceived by Scamardo in her reading of our prior holdings is explained by pointing out this court's distinction between the terms "immunity from suit" and "immunity from liability." In this respect, this court's use of the words "immunity from liability," means immunity from *execution* of the judgment against the property of the nonprofit organization. We discussed this distinction in *Clayborn,* noting that in *Smith v. Rogers Group, Inc.,* 348 Ark. 241, 72 S.W.3d 450 (2002), we concluded that § 23-79-210 only provides for direct actions against an insurer in the event that the organization at fault is immune from *suit* in tort. In *Smith,* the court explained the difference between immunity from suit and immunity from

liability, holding that "[i]mmunity from suit is the entitlement not to stand trial, while immunity from liability is a mere defense to a suit." *Smith*, 348 Ark. at 257.

*Clayborn* further specifically held that we have "never said that charitable organizations are altogether immune from *suit*." *Clayborn*, 348 Ark. at 566 (emphasis in original). The *Clayborn* court made the point that "the property of a charity cannot be sold under *execution* issued on a judgment rendered for the nonfeasance, misfeasance, or malfeasance of its agents or trustees." *Id*. (citing *Fordyce, supra*) (emphasis in original). *Clayborn* also cited the *Crossett Health Center v. Croswell* opinion for its comment on the "distinction between the right to sue and the power to execute in satisfaction of the judgment." *Clayborn* concluded that "a charitable organization may have suit brought against it and may have a judgment entered against it, but such judgment may not be executed against the property of the charity." *Id*.

■ We do not agree with Scamardo's suggestion that, if *Clayborn* is allowed to stand, unjust results will follow. She asserts that, as a result of *Clayborn*, a plaintiff would have to rely on the good will of a hospital to pay a judgment, contending that a liability carrier is only required to pay damages for which its insured is legally obligated. If a hospital is "immune from liability," she argues, its carrier will not be obligated to pay any damages that may accrue. However, such an argument appears to be premised on a misunderstanding of what our court meant when it used the term "immune from liability." As discussed above, the phrase does not mean that a nonprofit organization may not be found liable; rather, it means that the prevailing party in a lawsuit against the nonprofit may not execute on the property or assets of the nonprofit in order to satisfy any judgment.

■ However, as is true in the present case, the losing party's insurer (here, Steadfast) can be bound to pay up to its policy limits any judgment entered against the nonprofit entity (Sparks).[2] We therefore decline to overrule *Clayborn*, and we likewise see no

---

[2] We also note that, in the event that the charitable organization has no insurance, or if a judgment is entered in excess of policy limits, a trial court can consider the various factors established by this court to determine whether an organization is truly entitled to be immune from execution. Those factors were set out in *Masterson v. Stambuck*, 321 Ark. 391, 902 S.W.2d 803 (1995), and *Ouachita Wilderness Institute, Inc. v. Mergen*, 329 Ark. 405, 947 S.W.2d 780 (1997). They include the following: (1) whether the organization's charter limits it to

need to limit its holding, because it can be harmonized with this court's earlier cases regarding charitable immunity. We do, however, believe that the General Assembly should consider whether the charitable immunity doctrine should be abolished, as other jurisdictions have done over the years. *See, e.g., Rabon v. Rowan Mem. Hosp. Inc.*, 152 S.E.2d 485 (N.C. 1967) (overruling doctrine).

Affirmed.

charitable or eleemosynary purposes; (2) whether the organization's charter contains a "not-for-profit" limitation; (3) whether the organization's goal is to break even; (4) whether the organization earned a profit; (5) whether any profit or surplus must be used for charitable or eleemosynary purposes; (6) whether the organization depends on contributions and donations for its existence; (7) whether the organization provides its services free of charge to those unable to pay; and (8) whether the directors and officers receive compensation. *Masterson*, 321 Ark. at 401.