2010 Ark. 175

**Brenda DOWNING, Appellant,**

v.

**LAWRENCE HALL NURSING CENTER, Lawrence Memorial Hospital, and St. Paul Fire & Marine Insurance Co., Appellees.**

No. 09–621.

Supreme Court of Arkansas.

April 15, 2010.

---

Brian G. Brooks, Attorney at Law, PLLC, by: Brian G. Brooks, Greenbrier, and David A. Couch, PLLC, by: David A. Couch, Little Rock, for appellant.

Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., by: Jeffrey W. Hatfield, Little Rock, for appellees.

ELANA CUNNINGHAM WILLS, Justice.

This is the second appeal taken to this court by appellant Brenda Downing. In the first case, *Downing v. Lawrence Hall Nursing Center*, 368 Ark. 51, 243 S.W.3d 263 (2006), this court dismissed Downing's appeal for lack of a final order because the circuit court had not entered an order dismissing the "John Doe" defendants Downing named in her original complaint. In the present appeal, Downing challenges the circuit court's orders granting the motion to dismiss filed by appellees Lawrence Hall Nursing Center ("Lawrence Hall") and Lawrence Memorial Hospital ("Lawrence Memorial") and the motion for summary judgment filed by appellee St. Paul Fire & Marine Insurance Co.

The procedural history of this case is somewhat lengthy. On June 10, 2002, ap-

pellant Brenda Downing brought a wrongful death action [1] on behalf of the Estate of Robert Harris against Lawrence Hall; Lawrence Memorial; St. Bernard's Hospital, doing business as St. Bernard's Regional Medical Center; Dr. Robert Quevillon; and John Doe Insurance Companies A through Z. Dr. Quevillon and St. Bernard's were dismissed without prejudice in October 2005 and September 2005, respectively. Lawrence Hall and Lawrence Memorial filed a motion to dismiss on October 19, 2005, arguing that Downing lacked authority to file a complaint on behalf of the estate because letters of administration had not been filed at the time the complaint was filed. The circuit court granted the motion to dismiss the complaint in an order filed on November 22, 2005.

Downing filed a notice of appeal on December 2, 2005, and attempted to appeal the circuit court's decision to this court; however, as noted above, we dismissed the appeal for lack of a final order because there was no order dismissing the John Doe defendants in the record. *Downing v. Lawrence Hall Nursing Ctr.*, 368 Ark. 51, 243 S.W.3d 263 (2006).

About a year after the dismissal of Downing's appeal, in November 2007, this court handed down the case of *Steward v. Statler*, 371 Ark. 351, 266 S.W.3d 710 (2007), which held that, pursuant to Act 438 of 2007, letters of administration are not necessary to empower a person appointed to act for an estate, as long as there is an order appointing that person administrator. On January 17, 2008,

Downing filed a motion to set aside the November 2005 order of dismissal that had been based on her lack of letters of administration. The circuit court entered an order on February 13, 2008, granting her motion and setting aside the previous order of dismissal.

On January 29, 2008, Downing filed an amended complaint again naming Lawrence Hall and Lawrence Memorial and adding St. Paul Fire & Marine Insurance Co. as the liability carrier for those entities. Downing's complaint alleged that both Lawrence Hall and Lawrence Memorial were "non-profit/government entit[ies] owned and controlled by Lawrence County, Arkansas." The complaint further asserted that St. Paul, as the liability carrier, was "made a defendant to the extent its insureds are all immune from suit for tort pursuant to Ark.Code Ann. § 21–9–301 and Ark.Code Ann. § 16–120–101 *et seq.*" [2]

Lawrence Hall and Lawrence Memorial answered the amended complaint on February 7, 2008. In the answer, the defendants admitted that they were insured by St. Paul, but affirmatively asserted that the statute of limitations barred Downing's complaint against St. Paul. St. Paul moved for summary judgment on the same date, arguing that the amended complaint, which attempted to substitute St. Paul for the John Doe defendants, could not relate back to the original complaint so as to defeat the statute of limitations. In its accompanying brief, St. Paul argued that its existence had been known to Downing since January 2003,[3] and Downing's failure

---

1. The complaint also alleged causes of action for negligence and medical malpractice, as well as claims under the Arkansas Residents' Rights Act. *See* Ark.Code Ann. § 20–10–1201 to –1209 (Repl.2005).

2. Arkansas Code Annotated section 21–9–301 (Repl.2004) affords tort immunity to political subdivisions of the state, except to the extent that they are covered by liability insurance,

and Arkansas Code Annotated section 16–120–101 to –105 (Repl.2006) grants a measure of tort immunity to board members of nonprofit corporations and governmental entities.

3. Discovery was provided to Downing at that time naming St. Paul as the insurer.

to amend her complaint to name it as a defendant precluded relation back pursuant to Ark. R. Civ. P. 15(c).

Downing responded to St. Paul's motion for summary judgment on February 29, 2008. In her response, she pointed out that, during the pendency of the lawsuit, the law in this state regarding charitable immunity had changed radically. She argued that at the time she filed her initial complaint on June 10, 2002, this court had, on May 9, 2002, handed down *Clayborn v. Bankers Standard Insurance Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002), which held that there was no direct action against liability insurers for nonprofit corporations. That decision was affirmed in *Scamardo v. Jaggers,* 356 Ark. 236, 149 S.W.3d 311 (2004), which was handed down on February 26, 2004. As mentioned above, the circuit court dismissed Downing's complaint on November 22, 2005, because she did not have letters of administration. Three weeks later, however, this court decided the case of *Low v. Insurance Co. of North America,* 364 Ark. 427, 220 S.W.3d 670 (2005), which overruled both *Clayborn* and *Scamardo* and held that a plaintiff *could* bring a direct action against a liability carrier.

Downing also noted in her response to St. Paul's motion for summary judgment that, when this court dismissed Downing's appeal for lack of a final order on November 16, 2006, her counsel was aware that the *Steward v. Statler* case, dealing with the letters-of-administration issue, was pending before this court. Very shortly after that opinion came down on November 1, 2007, Downing successfully had the earlier order of dismissal set aside and filed her amended complaint that named St. Paul, the liability carrier for Lawrence Hall. Downing argued that her decision not to add St. Paul up to that point was not a "strategic decision," as argued in St.

Paul's summary-judgment motion, but was based on the law of charitable immunity at the time she filed her complaint and amended complaint. Therefore, she contended, she had complied with Rule 15(c), and her amended complaint naming St. Paul should relate back to the filing of the original complaint.

After a hearing on April 3, 2008, the circuit court entered an order on May 16, 2008, granting St. Paul's motion for summary judgment, finding that the statute of limitations had run against St. Paul. The court's order thus dismissed St. Paul with prejudice. Lawrence Hall and Lawrence Memorial subsequently filed a motion to dismiss, asserting that, as charitable institutions, they were completely immune from being sued in tort. Because they had admitted in their answer that they were "non-profit corporations/government entities," they urged that the complaint against them should be dismissed with prejudice. Downing responded that Lawrence Hall and Lawrence Memorial had not proven that they were charitable entities entitled to immunity. In addition, Downing alleged that their immunity was legislatively abrogated or waived with respect to her Residents' Rights Act claims and that the courts should abrogate the doctrine of charitable immunity in any event.

After a hearing on January 21, 2009, the circuit court entered an order on February 19, 2009, dismissing Lawrence Hall and Lawrence Memorial with prejudice. Downing filed a motion for reconsideration on February 26, 2009, pointing out that this court handed down the case of *Jackson v. Sparks Regional Medical Center,* 375 Ark. 533, 294 S.W.3d 1 (2009), on February 12, 2009. Downing described *Jackson* as "discuss[ing] the whipsaw effect on the plaintiff caused by the *Clayborn, Scamardo,* and *Low* decisions," and

she asserted that the "same whipsaw effect" was the cause of the dismissals entered against her. The trial court did not rule on Downing's motion for reconsideration, and it was thus deemed denied on March 30, 2009. Downing filed a timely notice of appeal on April 8, 2009. On appeal, she raises two main points: 1) charitable immunity does not bar some or all of her suit; and 2) the complaint against St. Paul was not time-barred.

In her first argument on appeal, Downing contends that the circuit court erred in concluding that Lawrence Hall was entitled to charitable immunity. She raises three separate arguments under this point heading. First, Downing claims that Lawrence Hall and Lawrence Memorial did not prove their entitlement to charitable immunity. Second, she urges that her claim under the Arkansas Residents' Rights Act is not barred by charitable immunity. Finally, Downing asks this court to abrogate the doctrine of charitable immunity.

In reviewing a court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Dollarway Patrons for Better Schs. v. Morehead,* 2010 Ark. 133, 361 S.W.3d 274; *Rhuland v. Fahr,* 356 Ark. 382, 155 S.W.3d 2 (2004). In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. *Dollarway Patrons, supra.* However, when a complaint is dismissed on a question of law, this court conducts a de novo review. *Id.* (citing *Branning v. State,* 371 Ark. 433, 267 S.W.3d 599 (2007)).

In her first subpoint, Downing argues that the trial court should not have granted Lawrence Hall and Lawrence Memorial's motion to dismiss on charitable-immunity grounds because there was no proof of their status as charitable entities. She urges that, because charitable immunity is an affirmative defense, it was the defendants' burden to prove that they were entitled thereto. Lawrence Hall and Lawrence Memorial respond that Downing initially pled that they were charitably immune in her complaint; they admitted that they were immune in their answer; and therefore, due to her "concession," there was no need for them to present any evidence of their charitable status.

In both her original complaint and her amended complaint, Downing included the following paragraphs:

4. Lawrence Hall Nursing Center is a non-profit corporation/ government entity owned and controlled by Lawrence County, Arkansas, with its principal place of business at 1309 West Main Street, Walnut Ridge, AR 72476.

5. Lawrence Memorial Hospital is a non-profit corporation/ government entity owned and controlled by Lawrence County, Arkansas, with its principal place of business at 1309 West Main Street, Walnut Ridge, AR 72476.

Moreover, in her original complaint, Downing asserted that "Defendants John Doe Insurance A through Z are the insurers for Lawrence Hall [and] Lawrence Memorial . . . and are made a defendant to the extent its insureds are all immune from suit for tort pursuant to Ark.Code Ann. § 21–9–301 and Ark.Code Ann. § 16–120–101 *et seq.*" Similarly, her amended complaint stated that "Defendant St. Paul Fire & Marine Insurance Company is the liability insurer for Lawrence Hall and Lawrence Memorial and is made a defendant to the extent its insureds are all immune from suit for tort pursuant to Ark.Code Ann. § 21–9–301 and Ark.Code Ann. § 16–120–101 *et seq.*"

In their answer to the original complaint, Lawrence Hall and Lawrence Memorial stated that they "admit that they are a nonprofit corporation/governmental charitable entity ... [and] affirmatively assert that they are immune from suit under the provisions of governmental and charitable immunity, and therefore, Plaintiff's complaint as to these defendants should be dismissed with prejudice." They further "admit[ted] that they are immune from suit pursuant to Ark.Code Ann. §§ 21–9–301 and 16–120–101 *et seq.*" Their answer to the amended complaint admitted the allegations of paragraphs 4 and 5, set out above, and further admitted that Lawrence Hall and Lawrence Memorial "were at times insured by St. Paul Fire & Marine Insurance Company." In addition, the answer to the amended complaint contained a paragraph stating that the defendants "adopt, reallege, and reassert any and all answers, defenses, and affirmative defenses set forth in the Answer to Plaintiff's Complaint previously filed with the court."

In their motion to dismiss, Lawrence Hall and Lawrence Memorial asserted that it was "undisputed [that Downing] has asserted that the Lawrence Defendants are 'non-profit corporations/government entities' in her pleadings and defendants have admitted same.... Accordingly, the Lawrence defendants must be dismissed with prejudice as a matter of law." As mentioned above, the circuit court agreed and granted Lawrence Hall and Lawrence Memorial's motion to dismiss. On appeal, Downing urges that the circuit court should not have granted the motion to dismiss in the absence of any evidence that Lawrence Hall and Lawrence Memorial were, in fact, entitled to charitable immunity.

The "essence of the charitable-immunity doctrine is that agencies, trusts, etc., created and maintained exclusively for charity may not have their assets diminished by execution in favor of one injured by acts of persons charged with duties under the agency or trust." *Anglin v. Johnson Reg'l Med. Ctr.*, 375 Ark. 10, 15, 289 S.W.3d 28, 31 (2008) (quoting *George v. Jefferson Hosp. Ass'n*, 337 Ark. 206, 211, 987 S.W.2d 710, 712 (1999)). The doctrine favors charities and results in a limitation of potentially responsible persons whom an injured party may sue. *Id.* Therefore, we give the doctrine a very narrow construction. *Id.; George v. Jefferson Hosp. Ass'n, supra* (citing *Williams v. Jefferson Hosp. Ass'n,* 246 Ark. 1231, 442 S.W.2d 243 (1969)). To determine whether an organization is entitled to charitable immunity, courts consider the following factors:

(1) whether the organization's charter limits it to charitable or eleemosynary purposes; (2) whether the organization's charter contains a "not-for-profit" limitation; (3) whether the organization's goal is to break even; (4) whether the organization earned a profit; (5) whether any profit or surplus must be used for charitable or eleemosynary purposes; (6) whether the organization depends on contributions and donations for its existence; (7) whether the organization provides its services free of charge to those unable to pay; and (8) whether the directors and officers receive compensation.

*Anglin*, 375 Ark. at 16, 289 S.W.3d at 31–32. These factors are illustrative, not exhaustive, and no single factor is dispositive of charitable status. *Id.*, 289 S.W.3d at 32.

In the present case, Lawrence Hall and Lawrence Memorial offered no proof on any of these factors. They urge that they did not need to because Downing's complaint had already pled that they were charitably immune, and that proof of these factors is only necessary when a hospital's

charitable status is being challenged by the plaintiff.[4] Downing responds that she never alleged that the defendants were charities and that she only stated that they were nonprofits that might claim immunity, and if they did, their insurance carriers would be liable under the direct-action statute.

■ This court has specifically held that charitable immunity is an affirmative defense. *Felton v. Rebsamen Med. Ctr.*, 373 Ark. 472, 480, 284 S.W.3d 486, 492 (2008). In *Felton*, this court concluded that charitable immunity falls into "the catch-all provision of Rule 8(c), as it is 'any other matter constituting an avoidance or affirmative defense,'" and as such, the defense "must be specifically pled to be considered by the circuit court." *Felton*, 373 Ark. at 480, 284 S.W.3d at 492 (citing Ark. R. Civ. P. 8(c)). The burden of pleading and proving an affirmative defense is on the party asserting it. *Vent v. Johnson*, 2009 Ark. 92, at 13, 303 S.W.3d 46, 52 (holding that statutory immunity under Arkansas Code Annotated section 21–9–301 was an affirmative defense that had to be asserted and proven by the defendant).

Here, as noted above, the Lawrence Hall defendants contend that Downing "pled" that they were charitably immune, and they were therefore required to do nothing more than "admit" to that status. Downing's complaint, however, did not plead that the defendants were charitably immune; rather, as set out above, she only stated that Lawrence Hall and Lawrence Memorial were nonprofit entities and that

the insurers were made defendants "to the extent" that Lawrence Hall and Lawrence Memorial were immune from suit in tort.

■ An entity's status as a nonprofit organization is but one factor to be considered in determining whether it is entitled to charitable immunity. *See Masterson v. Stambuck*, 321 Ark. 391, 902 S.W.2d 803 (1995) (adopting the eight factors for establishing charitable status). More to the point, an entity claiming charitable-immunity status bears the burden of affirmatively pleading the defense and proving its entitlement thereto. *See Felton, supra*. This court has specifically held that "[m]erely asserting [one's] status as a not-for-profit corporation is not equivalent to specifically raising the affirmative defense of charitable immunity, as not all not-for-profit organizations will be immune under the doctrine." *Neal v. Sparks Reg'l Med. Ctr.*, 375 Ark. 46, 51, 289 S.W.3d 8, 11 (2008) (citing *George, supra*).

Accordingly, we conclude that the circuit court erred in granting Lawrence Hall and Lawrence Memorial's motion to dismiss based on their "admission" that they were charitably immune. It was the appellees' burden to specifically plead and prove this affirmative defense, and "admitting" only that they were nonprofit organizations was insufficient to meet the pleading requirements for this defense.[5]

■ In her second point on appeal, Downing argues that the circuit court erred in granting St. Paul's motion for summary judgment on statute-of-limita-

---

**4.** At oral argument, counsel for Lawrence Hall and Lawrence Memorial conceded that no proof was offered as to the defendants' status as charitable entities.

**5.** As mentioned above, Downing also argues that charitable immunity has been legislatively abrogated with respect to claims under the Arkansas Residents' Rights Act, Arkansas

Code Annotated section 20–10–1201 to –1209 (Repl.2005), and that this court should judicially abrogate the doctrine altogether. Because it has not been demonstrated that Lawrence Hall and Lawrence Memorial are indeed entitled to charitable immunity, it would be premature for this court to consider or decide these issues at this juncture.

tions grounds. When Downing filed her amended complaint in January 2008 after this court's dismissal in *Downing I* and our decision in *Steward v. Statler, supra,* she named St. Paul as a defendant as the liability insurer for Lawrence Hall and Lawrence Memorial. St. Paul moved for summary judgment on February 7, 2008, asserting that, although the courts will permit a substitution for a John Doe defendant after the statute of limitations has expired, they will only do so when the substitution satisfies the requirements of Arkansas Rule of Civil Procedure 15(c). St. Paul asserted that Downing knew that it was Lawrence Hall and Lawrence Memorial's insurance carrier as of January 24, 2003, when the defendants sent Downing a letter supplementing discovery and identifying St. Paul. Because Downing had delayed naming St. Paul as a defendant for five years after filing her lawsuit, St. Paul argued that she had not met the requirement of Rule 15(c), and her amended complaint should be dismissed as to the insurer. The circuit court agreed and entered an order granting St. Paul's summary-judgment motion on May 16, 2008.

On appeal, Downing argues that the circuit court erred in concluding that her amended complaint did not relate back to the time of the filing of her original complaint and was thus time-barred. Arkansas Rule of Civil Procedure 15(c) governs the relation back of amended pleadings and provides as follows:

An amendment of a pleading relates back to the date of the original pleading when:

(1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(2) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (1) is satisfied and, within the period provided by Rule 4(i) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

In this case, St. Paul concedes that the claim asserted in the amended pleading arose out of the same transaction set forth in the original pleading, and it agrees that it received notice of the institution of the lawsuit in a timely fashion. St. Paul disputes only the matter of whether Downing's failure to name it in the original complaint was due to a "mistake concerning the identity of the proper party," contending that Downing's decision not to sue it at that time was a purposeful calculation that should not be utilized to circumvent the statute of limitations.

It is important to recall the timeline in this case, both of Downing's pleadings and the changes in this court's case law. Downing's original suit was filed on June 10, 2002. This court's opinion in *Clayborn v. Bankers Standard Insurance Co.,* 348 Ark. 557, 75 S.W.3d 174 (2002), was handed down on May 9, 2002. *Clayborn* held that Arkansas Code Annotated section 23–79–210, the direct-action statute, only provided for direct actions against an insurer in the event the organization at fault was immune from suit in tort. *Clayborn* further stated that this court had "never held that charitable organizations are completely immune from suit, but rather, we have only held that they are immune from execution against their prop-

erty." *Clayborn,* 348 Ark. at 567, 75 S.W.3d at 180.

Thus, at the time Downing filed her complaint, the law in Arkansas indicated that the action should be filed against the charitable entity, rather than its insurer. Accordingly, under the law in Arkansas at the time she filed her complaint, Downing properly brought suit against Lawrence Hall and Lawrence Memorial, alternatively naming John Doe insurance company defendants "to the extent [the] insureds are all immune from suit for tort."

The law did not change until December 15, 2005, when this court decided the case of *Low v. Insurance Co. of North America,* 364 Ark. 427, 220 S.W.3d 670 (2005), overruling both *Clayborn* and *Scamardo v. Jaggers,* 356 Ark. 236, 149 S.W.3d 311. In *Low,* this court held that the "not subject to suit for tort" language in the direct-action statute was synonymous with a charitable organization's immunity from tort liability, and plaintiffs alleging injury by a charitable organization *could* bring suit against the charity's liability insurer under the direct action statute. *See Sowders v. St. Joseph's Mercy Health Ctr.,* 368 Ark. 466, 470, 247 S.W.3d 514, 517 (2007).

Just prior to *Low,* Downing had filed a notice of appeal from the circuit court's dismissal of her complaint on the letters-of-administration issue. After resolution of that appeal—and after awaiting this court's decision in the *Steward v. Statler* case regarding letters of administration— Downing successfully petitioned the circuit court to set aside the earlier dismissal. At that time, Downing filed her amended complaint, substituting St. Paul for the previously named John Doe insurance carriers, on January 29, 2008. St. Paul then moved for summary judgment on the grounds that the claims against it were time-barred because Downing's decision to not name it earlier was not due to a mis-

take as to the defendant's identity under Rule 15(c).

This court recently addressed an analogous situation in *Jackson v. Sparks Regional Medical Center,* 375 Ark. 533, 294 S.W.3d 1. In that case, Jackson filed a medical-injury action against Sparks Regional Medical Center, Steadfast Insurance, and several other individuals, including John Doe defendants, on February 7, 2002. On May 6, 2002, Jackson filed an amended complaint that substituted Columbia Casualty Co. for one of the John Doe defendants (Columbia was the proper liability carrier for Sparks, rather than Steadfast, which Jackson voluntarily nonsuited on May 7, 2002). After this court handed down *Scamardo* in February of 2004, Jackson voluntarily nonsuited Columbia on April 6, 2004. Jackson also took a nonsuit as to Sparks on July 29, 2004. In July 2005, within the one-year savings statute, Jackson refiled his complaint against Sparks, various doctors, and John Does Nos. 1–10. In December 2005, this court handed down *Low,* 364 Ark. 427, 220 S.W.3d 670. On February 26, 2007, Sparks filed a motion for summary judgment on the basis of charitable immunity, and on July 11, 2007, Jackson filed an amended complaint that added Columbia as a defendant. *Jackson,* 375 Ark. at 542–43, 294 S.W.3d at 7.

The circuit court in *Jackson* granted Columbia's motion for summary judgment. On appeal Jackson argued that he had been "whipsawed" by the changes in the law on charitable immunity during the course of his lawsuit, and that his amended complaint naming Columbia should relate back to the filing of his original suit. This court agreed, concluding that, at the time Jackson refiled his lawsuit, *Scamardo* was the prevailing law, and Columbia thus could not have been the appropriate party

to sue when that complaint was filed. *Id.* at 543, 294 S.W.3d at 7.

This court further held that relation back of the amended complaint under Rule 15(c) was proper, stating that

> Rule 15(c) states only that there needed to be a "mistake concerning the identity of the *proper party.*" (Emphasis added [in original] ). While Jackson obviously knew that Columbia was the correct liability insurer for Sparks, he was unaware that Columbia was the proper defendant because of the change in the law. In fact, Columbia was not the proper defendant during the time within which he was required to refile his lawsuit. Columbia only became the proper defendant after *Low,* which was not decided until after Jackson lost his opportunity to refile against it.

*Id.* at 544, 294 S.W.3d at 8. The court further pointed out that it was this court's decisions that caused Jackson to make an "understandable mistake," and to not allow Rule 15(c) to apply "would indeed have an unfair and prejudicial result." *Id.* at 545, 294 S.W.3d at 9. Therefore, we held that Jackson satisfied all of the requirements of Rule 15(c) and that the circuit court had erred in granting Columbia's motion for summary judgment.

St. Paul argues that the instant case is more akin to *George v. Jefferson Hospital Ass'n,* 337 Ark. 206, 987 S.W.2d 710, in which this court held that the amended complaint did not meet the requirements of Rule 15(c) and thus could not relate back. In *George,* however, the complaint was filed prior to the upheavals in this court's decisions concerning charitable immunity. There, the plaintiff's decision to omit the insurance carrier was not based on a mistake as to the insurer's identity, but was the result of a strategic decision to avoid suing the insurer prior to a judicial determination of the hospital's charitable status. *George,* 337 Ark. at 216, 987 S.W.2d at 715. Thus, the decision not to name the insurer was a "purposeful calculation, mistaken perhaps, as to its consequence but not as to its choice of parties." *Id.* at 217, 987 S.W.2d at 715.

We conclude that *Jackson* is the controlling case. At the time Downing filed her lawsuit in June of 2002, Downing properly named the Lawrence defendants and, alternatively, the John Doe defendants, based on this court's language in *Clayborn.* However, after the *Low* decision, St. Paul became the proper party, and Downing amended her complaint to reflect the new situation.[6] Thus, under this court's reasoning in *Jackson,* her mistake was as to the identity of the proper party and, as a result, the circuit court erred in finding that Downing's amended complaint against St. Paul was barred by the statute of limitations and in granting St. Paul's motion for summary judgment.

Reversed and remanded.

---

**6.** That she waited over two years after *Low* to do so is immaterial. Downing had filed her notice of appeal in the letters-of-administration case two weeks before *Low* was handed down, and thus there was an ongoing appeal during much of the time between the *Low* decision and Downing's amended complaint. In *Jackson,* this court noted that Jackson waited eighteen months after *Low* was decided to file his amended complaint, and while there was nothing in the record to suggest why, "the situation would not have been any different had he attempted to do so immediately following *Low,*" the statute of limitations having already run. *Jackson,* 375 Ark. at 545, 294 S.W.3d at 8.