2010 Ark. App. 367

Charles T. PRESLEY, Appellant

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Baxter County Regional Hospital, n/k/a Baxter Regional Medical Center, Michael S. Hagaman, M.D., and Kerr Medical Clinic, Appellees.

No. CA 09–762.

Court of Appeals of Arkansas.

April 28, 2010.

John Atkins Crain, Mountain Home, AR, for appellant.

Shannon Lee Fant, Joel Isaac Farthing, Dale Garrett, Bassett Law Firm, LLP, Fayetteville, AR, for appellee.

COURTNEY HUDSON HENRY, Judge.

This malpractice case involves the direct-action statute and the changes in the law that occurred during the course of the litigation. Appellant Charles Presley challenges the orders entered by the Baxter County Circuit Court dismissing his complaint against St. Paul Fire and Marine Insurance Company (St.Paul), the insurer of appellee Baxter County Regional Hospital, Inc. (hospital), and dismissing his amended complaint against both St. Paul and the hospital. Four issues are raised on appeal. Appellant first argues that the

trial court erred in dismissing the initial complaint that he brought against St. Paul pursuant to the direct-action statute. As his second point, appellant contends that the trial court erred in determining that he did not plead sufficient facts to establish the immunity of the hospital. Further, appellant asserts that the trial court erred in concluding that the amended complaint naming the hospital as a defendant did not relate back to the filing of the initial complaint. Appellant also argues that the trial court erred by denying his motion to allow an earlier appeal under the provisions of Rule 54(b) of the Arkansas Rules of Civil Procedure. We find merit in the first two points and reverse and remand.

On February 1, 2000, appellant received treatment at the hospital's emergency room for injuries he sustained in an automobile accident. He subsequently received follow-up treatment from his family physician, appellee Dr. Michael Hagaman, at Hagaman's office, referred to as appellee Kerr Medical Clinic. On January 25, 2002, appellant filed this malpractice suit against St. Paul as the hospital's insurer pursuant to the direct-action statute, Arkansas Code Annotated section 23–79–210 (Supp.2009).[1] He also asserted malpractice claims against Dr. Hagaman and the Kerr Medical Clinic. With regard to St. Paul's liability, appellant alleged:

> That Baxter County Regional Hospital is not subject to suit in tort due to the fact that it is a cooperative, non-profit corporation, which has received 501(c)(3) designation from the Internal Revenue Service. That at the time of the events leading to the Complaint at Law, the Baxter County Regional Hospital was insured by the separate defendant, St. Paul Fire and Marine Insurance Company. Pursuant to Arkansas Code Annotated section 23–79–210, St. Paul Fire and Marine Insurance Company is directly liable for any negligent medical services performed at the Baxter County Regional Hospital and, therefore, St. Paul Fire and Marine Insurance Company is the correct party in interest.

On April 30, 2002, St. Paul filed its answer to appellant's complaint wherein St. Paul admitted that "[s]eparate defendant St. Paul Fire and Marine Insurance Company is the proper substitute defendant pursuant to Arkansas law based on the non-profit status of Baxter County Regional Hospital, n/k/a Baxter Regional Medical Center."

On May 9, 2002, just nine days after St. Paul filed its answer, the supreme court handed down the decision in *Clayborn v.*

---

1. This statute provides in part:

    (a)(1) When liability insurance is carried by any cooperative nonprofit corporation, association, or organization, or by any municipality, agency, or subdivision of a municipality, or of the state, or by any improvement district or school district, or by any other organization or association of any kind or character and not subject to suit for tort, and if any person, firm, or corporation suffers injury or damage to person or property on account of the negligence or wrongful conduct of the organization, association, municipality, or subdivision, its servants, agents, or employees acting within the scope of their employment or agency, then the person, firm, or corporation so injured or damaged shall have a direct cause of action against the insurer with which the liability insurance is carried to the extent of the amounts provided for in the insurance policy as would ordinarily be paid under the terms of the policy.

    ....

    (3) The insurer shall be directly liable to the injured person, firm, or corporation for damages to the extent of the coverage in the liability insurance policy, and the plaintiff may proceed directly against the insurer regardless of the fact that the actual tortfeasor may not be sued under the laws of the state.

*Bankers Standard Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002), where the supreme court affirmed the dismissal of a complaint filed against an insurer under the direct-action statute. The supreme court's primary holding was that the direct-action statute was not applicable because the appellant did not plead any facts to show that the insured was a nonprofit corporation that was immune from suit in tort. The court remarked that it knew of no law holding that all nonprofit corporations, by virtue of their status as a nonprofit entity, are immune from suit in tort. In addition, the supreme court rejected the appellant's assertion that the insured enjoyed charitable immunity because the complaint contained no allegation that the insured was a charitable organization. As a secondary basis for its decision, the supreme court commented that the direct-action statute would not apply in any event "because we have never held that charitable organizations are immune from suit, but rather, we have only held that they are immune from execution against their property." *Id.* at 567, 75 S.W.3d at 180.

On September 23, 2002, St. Paul moved to dismiss based on the *Clayborn* decision. The trial court granted the motion by an order dated October 6, 2003. In its order, the trial court relied on *Clayborn* to hold that appellant had alleged no facts to support his claim of the hospital's immunity from suit and that St. Paul was not a "proper substitute defendant directly liable for its torts." Although the court dismissed the complaint against St. Paul, it granted appellant fifteen days to plead further pursuant to Rule 12(j) of the Arkansas Rules of Civil Procedure.

On October 20, 2003, appellant filed an amended complaint adding the hospital as a defendant and stating:

That the Baxter County Regional Hospital, Inc., is a domestic non-profit corporation organized and authorized under and by virtue of the laws of the State of Arkansas with its principal place of business in Mountain Home, Arkansas, engaged in providing medical services and may not be subject to tort suit for its negligence as hereinafter set out and if not subject to tort suit for its negligence as hereinafter set out then its liability insurance carrier, St. Paul Fire and Marine Insurance Company, at the time of the acts complained of and set forth in this Complaint at Law, the separate Defendant, St. Paul Fire and Marine Insurance Company, is a proper party Defendant. If in the alternative the separate Defendant Baxter County Regional Hospital, Inc., d/b/a Baxter Regional Medical Center, Inc., alone is a proper party Defendant.

Appellant also filed a brief in support of the amended complaint in which he argued that his claim against the hospital was not barred by the statute of limitations because the amended complaint should relate back to the date that the original complaint was filed under Rule 15(c) of the Arkansas Rules of Civil Procedure.

On October 27, 2003, the hospital and St. Paul filed a motion to dismiss the amended complaint. While this motion was pending, the supreme court decided the appeal of *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004). There, the supreme court adopted the *obiter dictum* in *Clayborn, supra,* and held that the direct-action statute does not apply to charitable organizations, as those institutions are not immune from suit. On June 14, 2004, the trial court dismissed the allegations in the amended complaint pertaining to St. Paul based on *Clayborn* and *Scamardo.* The court also dismissed the amended complaint as to the hospital, ruling that the statute of limitations barred appellant's claim against the hospital because the

amended complaint did not relate back to the filing of the original complaint.

On September 24, 2004, appellant filed a motion requesting a Rule 54(b) certification so that he could pursue an immediate appeal. The trial court denied this motion on February 24, 2005. In March 2005, the trial court also denied appellant's motion to reconsider the Rule 54(b) issue.

On December 15, 2005, the supreme court announced its decision in *Low v. Insurance Company of North America*, 364 Ark. 427, 220 S.W.3d 670 (2005). In that appeal, Low argued that the court should disavow the *dicta* contained in *Clayborn, supra,* and overturn the decision in *Scamardo, supra.* The supreme court agreed with Low's argument. In its opinion, the supreme court gave a detailed history outlining the development of the law pertaining to the direct-action statute and the question of immunity and concluded that *Clayborn* and *Scamardo* were out of step with its interpretation of the statute, which had developed for over forty years. The court overruled *Scamardo* and the *Clayborn dicta* and held that a qualified charitable organization was immune from suit as well as tort liability and that the direct-action statute authorized an action to be filed against the charitable institution's liability carrier.

On October 29, 2007, the trial court granted Dr. Hagaman's motion for summary judgment. Appellant brought an appeal, but we dismissed for the lack of a final order because Kerr Medical Clinic remained as a defendant. *Presley v. Baxter County Reg'l, Inc.,* CA08–90, 2008 WL 4062000 (Ark.App. Sept. 3, 2008) (unpublished). On March 24, 2009, the trial court entered an order dismissing the clinic with prejudice. This timely appeal followed.

Appellant's first argument is that he correctly sued St. Paul in his original complaint and that the trial court erred in ruling that St. Paul was not a proper substitute defendant for the hospital. We review a trial court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and viewing them in the light most favorable to the plaintiff. *Tate v. Lab. Corp. of Am. Holdings,* 102 Ark. App. 354, 285 S.W.3d 261 (2008). In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. *Downing v. Lawrence Hall Nursing Ctr.,* 2010 Ark. 175, 369 S.W.3d 8. However, when a complaint is dismissed on a question of law, we conduct a de novo review. *Dollarway Patrons for Better Schs. v. Morehead,* 2010 Ark. 133, 361 S.W.3d 274.

Before *Clayborn, supra,* the supreme court had held that charitable organizations were immune from execution on their property and were, therefore, immune from tort liability. *See, e.g., Helton v. Sisters of Mercy of St. Joseph's Hosp.,* 234 Ark. 76, 351 S.W.2d 129 (1961). The court had also held that, where a charitable organization was not liable in tort, its insurer was subject to a direct action pursuant to Arkansas Code Annotated section 23–79–210. With the *dicta* in *Clayborn,* the supreme court broke with these precedents by distinguishing between a charitable organization's immunity from suit and its immunity from liability and stating that the direct-action statute provided for suit to be brought against an insurer only in the event that the organization was immune from suit in tort. The supreme court reaffirmed this distinction in *Scamardo, supra.* However, in *Low, supra,* the court overruled the *Scamardo* decision and the *dicta* in *Clayborn* and held that immunity from liability in tort constitutes immunity from suit under the direct-action statute and that the statute permits a law-

suit to be filed against the insurer of the charitable organization.

The state of the law has come full circle during the course of this case, and with the decision in *Low*, the law is once again the same as it was when appellant filed his original complaint against St. Paul. In *Felton v. Rebsamen Med. Ctr.*, 373 Ark. 472, 284 S.W.3d 486 (2008), the supreme court stated that the decision in *Low* applied retroactively. Therefore, we hold that the trial court erred in dismissing the complaint against St. Paul by ruling that the direct-action statute did not apply.

Appellant next argues that the trial court erred in finding that he did not plead sufficient facts in his original complaint to establish the hospital's immunity. In *Clayborn*, the primary holding of the court was that the trial court properly dismissed the complaint against the insurer because an entity's status as a nonprofit corporation does not *ipso facto* demonstrate that the corporation is immune from suit. Here, appellant not only alleged that the hospital was a nonprofit corporation, but he also asserted that the hospital was "not subject to suit in tort due to the fact that it . . . has received 501(c)(3) designation from the Internal Revenue Service." This subsection of the federal tax code confers tax-exempt status on corporations that are organized and operated exclusively for religious and charitable purposes, or the like. 26 U.S.C.A. § 501(c)(3) (West 2010). Treating the facts alleged in the complaint as true and viewing them in the light most favorable to appellant, we hold that this language sufficiently invoked the direct-action statute to survive a motion to dismiss.

Appellant's remaining points are moot, as resolving them will have no practical legal effect on the outcome of the litigation. *Rudder v. Hurst*, 2009 Ark. App. 577, 337 S.W.3d 565. In light of our deci-

sion that appellant properly filed suit against St. Paul in the original complaint, it is irrelevant whether the amended complaint adding the hospital as a defendant related back to the filing of the original complaint. Also, even if we were to agree with appellant that the trial court should have allowed an appeal under Rule 54(b), that is an error that cannot be rectified at this juncture.

Reversed and remanded.

GLADWIN and BROWN, JJ., agree.